MOSES CARR, administrator, *vs.* NATHANIEL A. SILLOWAY & others.

A father, secretly, and with the design of evading the statute of wills and preferring two of his children, A. and B., made two promissory notes amounting to the whole value of his estate, payable to A. on demand, and gave them to A., taking in exchange eleven promissory notes made by A. of equal amount in the aggregate, payable three months after demand. These eleven he indorsed, addressed them severally to his wife, his children, and a nephew, and deposited them with B., in a sealed package, to be opened a year after his death, if he should not reclaim it in h'* lifetime. He died intestate, without reclaiming it; it was opened in a year, and the n )tes distributed; and then, A. having become bankrupt without paying any of them, suits were brought upon some of them against the administrator of the intestate indorser, and after demand and refusal of pay·ment suits were also brought against him upon the other two notes by an indorsee of them

**from A.** *Held,* that the administrator might maintain a bill in equity against the parties interested in the various notes, to settle all their rights or interests in one suit, under the clause of the Gen. Sts. *c.* 113, § 2, giving equity jurisdiction in cases where there are more than two parties having distinct rights or interests which cannot be justly and definitely decided and adjusted in one action at the common law.

BILL IN EQUITY by the administrator of the estate of Daniel Silloway, deceased intestate, against eighteen persons alleged to be holders of or interested in certain promissory notes described in the bill.

The bill alleged that the intestate died at Newburyport September 17, 1866 ; that the plaintiff was duly appointed administrator, and assumed the trust; that the property of the intestate amounted to about $28,000 ; and that he left a widow, two children of a former marriage, namely, Daniel Silloway, Jr., and Mrs. Mary A. Bradley, five children of the second marriage, five grandchildren, (who were issue of three deceased children of the second marriage,) and a nephew.

It also alleged that in September 1867, more than a year after the death of the intestate, Mrs. Bradley produced a sealed package, the existence of which was previously unknown to the plaintiff, and, as he believes, to all the world except Mrs. Bradley and her brother, Daniel Silloway, Jr., upon the envelope of which was the following inscription, dated September 24, 1864, and signed by the intestate : " Special and confidential deposit, with instructions to my depositary. In any event that may happen to me to prevent my call for this sealed deposit, this deposit to be opened by the depositary in one year from said event, or of my death, and each sealed package to be delivered as directed. Each package to be opened in presence of the depositary, and a record of the contents of each made and delivered to or in presence of Daniel Silloway, Jr."

The bill further alleged that this envelope, being broken in the presence of the plaintiff, was found to cover eleven sealed packages, addressed, one to Mrs. Bradley, one to Mayo Gerrish and Hannah Gerrish, (who were the parents of the wife of Daniel Silloway, Jr.,) one each to the five surviving children of the intestate's second marriage, one each to the three families of grandchildren, and one to the nephew ; that printed circulars were sent

by Mrs. Bradley to the persons to whom these packages were addressed, which circulars were dated September 28, 1867, contained each a copy of the inscription upon the outer envelope, and gave notice that the envelope so inscribed had been opened in the plaintiff's presence and found to contain eleven sealed packages, " one of the same directed to you, and will be delivered to you or any person authorized to open the same, on October 7, 1867, from two to four o'clock, P. M., at the house of Daniel Silloway, Jr., as by the request and directions of the depositary; " that on the day thus designated the several persons thus notified (except Mrs. Lucy J. Clark, one of the children of the second marriage, who had meanwhile died) assembled pursuant to the notice, and the plaintiff was also notified and was present; that the sealed packages were then delivered to the persons to whom they were addressed, or their representatives, (except the one addressed to Mrs. Clark,) and on being opened were found to contain each a promissory note signed by Daniel Silloway, Jr., dated September 24, 1864, made payable to the intestate or his order three months after demand, and purporting to be indorsed by him payable to the order of said persons respectively; that the amounts of these notes were as follows: that indorsed to Mrs. Bradley, $3500, that to Mr. and Mrs. Gerrish, $10,000, and those to the four children of the second marriage who were present, to the five grandchildren, and to the nephew, $13,500 in all, making a total of $27,000; that the package addressed to Mrs. Clark remains in Mrs. Bradley's possession unclaimed and unopened, and the plaintiff believes it contains a like note for $1000, which, if true, would make the whole amount of these notes $28,000; that, immediately upon this opening and examination of the packages, Daniel Silloway, Jr., who was present, said that he was ready to have demands made on him, and several of the persons made demand accordingly; and that then the company separated, each taking away his or her note.

The bill further alleged that Daniel Silloway, Jr., took advantage of the insolvent laws of this Commonwealth in December 1863 or January 1864, eight or nine months before the date of his notes in the packages, and obtained his discharge in insolvency,

paying little or nothing to his creditors, among whom was the intestate; that from that time forwards, until the date of the notes, September 24, 1864, he did little or no business, and acquired no property, all which the intestate well knew; that on October 8, 1867, the day after the opening of the packages, he commenced proceedings in the district court of the United States as a bankrupt, in which he had since obtained a discharge; and that in his schedule of debts as a bankrupt he included the promissory notes of the amount of $27,000 contained in the opened packages, and also a promissory note for $1000 as due to Mrs. Clark, and in his schedule of assets he made no mention of two promissory notes of the intestate, (hereafter to be mentioned,) for $24,500 and $3500 respectively, or of any proceeds therefrom or equivalent therefor.

The bill then alleged that, after the lapse of some months from the opening of the packages, two promissory notes, purporting to be signed by the intestate and witnessed by Mrs. Bradley, were presented to the plaintiff by one John Huse in behalf of Jesse Thurlow, (who was a nephew of Daniel Silloway, Jr.'s wife,) with a demand for their payment; that these notes bore date of September 24, 1864, were for the sums of $24,500 and $3500 respectively, payable to Daniel Silloway, Jr., or his order, on demand, with interest, and were indorsed by Daniel Silloway, Jr., payable to the order of Jesse Thurlow; that the plaintiff refused to pay these notes, and Jesse Thurlow brought two suits against him thereon, which were still pending; and that several of the holders of the notes of Daniel Silloway, Jr., in the opened packages, had, since the lapse of three months from the opening of the packages, demanded payment thereof from him, and three of them, (including Mrs. Bradley,) and George D. Thurlow, claiming to be indorsee of the $10,000 note from Mayo and Hannah Gerrish, had brought suits against him thereon, which also were pending.

The bill then alleged " that if any transaction ever took place on September 24, 1864, as might be inferred from the existence of the various promissory notes hereinbefore set forth, it was as follows: That Daniel Silloway, Jr., and Mrs. Bradley, contriv-

ing and intending to so arrange matters that at their father's death the property should not be divided among his several children as the property of an intestate would be, but that a larger share should pass directly to Mrs. Bradley, and indirectly to said Daniel, Jr., through his father in law and mother in law, said Mayo and Hannah Gerrish, secretly, and without the knowledge of the others interested in said estate, induced and persuaded their father to execute and deliver and inclose the various notes of that date ; and that the whole of said transaction was with the intent to evade the statute of wills, and dispose of the property of the intestate, after his death, in a manner not authorized by law, and in violation of the rights of the widow and of the other children of the deceased."

The final allegations of the bill were as follows: " And the plaintiff says that it is sometimes wrongfully pretended by some of the defendants, that those among the recipients of the eleven packages, who on October 7, 1867, demanded payment of said notes, thereby ratified all the transaction which gave rise to said notes ; but the plaintiff says, upon information and belief, that those persons were taken by surprise, were not fully informed as to the facts connected with the origin of said notes, and acted improvidently and without legal instruction or counsel, and are not bound thereby. And the plaintiff says that it is wrongfully pretended by some or all of the defendants that Jesse Thurlow is a *bonâ fide* indorsee and holder of the notes on which he has commenced suit ; but the plaintiff alleges that he took them and holds them, paying no consideration whatever for them, and with a full knowledge of all the facts connected with their inception and origin ; and that it is wrongfully pretended by some or all of the defendants, that said eleven notes above named, in the hands of the present holders, were each a *donatio causâ mortis*, and therefore good and valid in law, but the plaintiff says that this is not so ; and that it is further wrongfully pretended by some or all of the defendants, that the said eleven notes are good and valid in their hands as a gift *inter vivos*, but the plaintiff says that it is not so , and that it is further wrongfully pretended by some or all of the defendants, that the said interchange of notes was a

common and usual business transaction, and, even if no consideration was paid on either side, it was for mutual accommodation, and the mutuality was a good consideration, but the plaintiff says it is not so. And the plaintiff says that he has demanded of and from the several persons who received the ten packages, that they should deliver to him the notes which were contained therein, and has made a similar demand on George D. Thurlow, who assumes to be the indorsee of the note inclosed to Mayo and Hannah Gerrish, and has demanded of Mrs. Bradley the surrender to him of the package directed to Mrs. Clark, which remained in said Bradley's possession unclaimed."

The prayer of the bill was that the plaintiff, as having no adequate remedy at law, might have an order and decree " that the several persons who hold or are interested in the several eleven notes, first mentioned in this bill, should bring them into this court to be cancelled and delivered to him ; that Jesse Thurlow be ordered to suspend further proceedings in his suit, and bring into this court his two notes above named, upon which he has commenced suit, there to be cancelled or to await such other disposal as the court may direct ; that the whole transaction of September 24, 1864, as herein set forth, may be declared illegal, null and void ; that all parties be restored to their rights, as they would have been had none of said notes been given, and be enjoined to take no further steps in reference thereto ; and for such further and general relief as equity and justice may require."

Those of the defendants who appeared demurred to the bill for want of equity, and on the ground that the plaintiff had a full, adequate and complete remedy at law ; and the case was thereupon reserved for the consideration of the full court, by *Ames,* J., who granted a temporary injunction, requiring the defendants " to suspend and postpone the prosecution of any suit or suits at common law against the plaintiff upon any of the promissory notes described or referred to in the bill."

*S. B. Ives, Jr.,* for the defendants, cited Story Eq. §§ 76, 882, 894 ; *Metcalf* v. *Cady,* 8 Allen, 587 ; *Pool* v. *Lloyd,* 5 Met. 525 *Saltonstall* v. *Woodman,* 7 Cush. 181 ; *Bassett* v. *Brown,* 100 Mass. 355.

*B. F. Thomas & J. C. Park*, for the plaintiff.

CHAPMAN, C. J. The eleven notes, amounting in the aggregate to $28,000, were not gifts *inter vivos*, the gift never having been completed by delivery. Nor were they gifts *causâ mortis*. Independently of the question whether they could be the subjects of such a gift, they were not thus given. The indorsements were written, and they were inclosed in sealed packages, September 24, 1864, and left with Mary A. Bradley. The outer envelope, which inclosed them all and was sealed, contained the written direction quoted in the statement of the case. Thus that depositor made the depositary his own agent, reserved to himself a right to call for the package, and if he were to become *non compos*, or if he should die, it was to be opened in one year after such event; and the transaction was not in contemplation of that event. He died September 17, 1866. There is no ground to contend that this constituted a gift *causâ mortis*, for it had hardly any of the elements of such a gift. The notes remained the property of the intestate till his death, and his administrator is entitled to them.

The other two notes given by him to his son, amounting to $28,000, were payable on demand, and, by Gen. Sts. *c.* 53, § 10, are subject to any legal defence in the hands of the holder which would be a defence against the payee. They would be subject to the administrator's claim to set off the other notes of equal amount against them, even if they ever had any valid consideration, or if the bankruptcy of the son did not constitute a failure of consideration under the circumstances.

The plaintiff is entitled to a specific delivery of the notes, in order that he may use them in set-off against these other two notes. *Sears* v. *Carrier*, 4 Allen, 339. But the defendants contend that he has a plain, adequate and complete remedy at law, to obtain them by action of replevin; and the bill does not allege that they cannot be replevied. If the bill can be maintained, it must be upon some other ground.

One of the clauses of the Gen. Sts. *c.* 113, § 2, gives a remedy in equity in cases in which there are more than two parties having distinct rights or interests which cannot be justly and definitely

decided and adjusted in one action at the common law. This clause was inserted in the Rev. Sts. *c.* 81, § 8. The commissioners say its purpose was to obviate the inconvenience which will occur in all cases which involve the rights of three or more distinct parties, and because a court of common law cannot deal with more than two parties at a time. In *Hale* v. *Cushman*, 6 Met. 425, the court say it is manifestly designed to meet a case where a judgment between two parties would leave a controverted claim between one or the other of them with a third person not bound by the judgment.

The plaintiff in this case, as administrator, holds the estate of Daniel Silloway in trust to pay his debts and distribute the balance among those entitled to it by law. The claims of the defendants against the estate all grew out of one transaction ; they relate to the fund in his hands ; and the title to the eleven notes first mentioned depends upon a single question. In a court of law the plaintiff can deal with only one of the parties at a time, and the trust fund is exposed to destruction by the separate litigation of thirteen suits, and the administrator and those entitled to the estate are exposed to the trouble and delay of the litigation. And as to the holders of the notes, questions of law might be decided adversely to them in one of the actions at law, to which they would not be parties, and in which they would have no right to be heard. All of them are apparently interested in some of the legal questions that may arise in respect to the whole transaction. By means of this bill, a single suit will determine the whole controversy, all parties being fully heard, and a multiplicity of actions at law will be prevented. *Demurrer overruled.*