MYLES J. FERRICK *vs.* LAWRENCE N. BARRY & another
(and a companion case [1]).

Middlesex.   April 1, 1946. — September 17, 1946.

Present: FIELD, C.J., LUMMUS, QUA, RONAN, & SPALDING, JJ.

*Partnership,* Dissolution, Accounting. *Equity Jurisdiction,* Dissolution
of partnership, Specific performance, Plaintiff's clean hands, Reten-
tion for assessment of damages. *Equity Pleading and Practice,* Appeal.
*Contract,* Parties, For lease. *Agency,* Ratification. *Damages,* For
breach of contract.

An "interlocutory" decree in a suit in equity dissolving a partnership
and ordering it wound up and its assets distributed was so far final
that the case properly came to this court on an appeal therefrom.
A decree in equity dissolving a partnership at the instance of two of its
three partners was justified under G. L. (Ter. Ed.) c. 108A, §§ 31 (2);
32 (1) (c), (d), (f), by conduct of the third partner which, although
not dishonest, brought about such discord between him and the other
two partners that the business could no longer be continued on the
basis of equality of proprietorship and management among the partners
as contemplated by the partnership articles.
A defence of unclean hands barring a suit in equity by a partner for dis-
solution of the partnership was not established by the mere making of
certain extravagant allegations in the bill; nor by the plaintiff's
failure to obtain a lease of certain premises for the benefit of the partner-
ship as provided in its articles, where his failure was not fraudulent,
the partnership was actually occupying such premises, and soon after
the articles were executed the defendant's conduct became such as to
make a dissolution probable.
Specific performance of a provision in partnership articles requiring one
of the partners to give to another partner, solely on a dry trust for
the benefit of the partnership, a lease of premises occupied by it,
could properly be refused in the discretion of the court in the cir-
cumstances, where the partnership had been ordered dissolved and
wound up and the partners other than the one seeking specific per-
formance did not want the lease.
A wife who was the owner of certain real estate was not bound by a sealed
instrument wherein her husband had covenanted to cause a lease of
the real estate to be given to another party where she was not a party
to the instrument and it did not purport to bind her or to have been
made in her behalf; nor could she ratify such instrument.

----

[1] The companion case is Lawrence N. Barry & another *vs.* Myles J. Ferrick
& another.

Specific performance of a covenant to give a lease for a certain term with an option for a further term should not be granted at a time after the expiration of the original term for which it was to have been given and when the circumstances were such that it was impossible to say that the option for the further term would have been exercised.

In a proceeding between partners, where the partnership had been ordered dissolved and wound up, certain evidence respecting real estate which had been occupied by the partnership did not afford a basis for the ascertainment of damages for a technical breach by the defendant of the partnership articles through failing to perform a covenant to procure a lease of such real estate to the plaintiff solely for the benefit of the partnership.

Two BILLS IN EQUITY, filed in the Superior Court on April 26, 1944, and May 15, 1944, respectively.

The suits were heard by *Brogna*, J.

*J. C. Johnston*, (*H. C. Thompson* with him,) for Ferrick.

*E. M. Murray*, (*J. H. Burke, Jr., & L. L. Bobrick* with him,) for Barry and Joy.

QUA, J. These are two suits in equity.

In the first case Ferrick sues Lawrence N. Barry and Margaret M. Barry, his wife, for alleged breach by Lawrence N. Barry of a covenant contained in articles of copartnership dated September 22, 1943, among Ferrick, Lawrence N. Barry, and one Joy, by which Lawrence N. Barry agreed to cause to be executed to Ferrick "as trustee for the partnership" a lease of certain premises and machinery at Hudson, where the business of the partnership was carried on. It is alleged that the defendant Lawrence N. Barry fraudulently conveyed the real estate to the defendant Margaret M. Barry and that she merely holds the title in his behalf. The prayers are that she be ordered to convey to him, and that he be ordered to execute to Ferrick a lease of the real estate and machinery in accordance with the articles of copartnership, and for further relief.

In the second case Barry and Joy sue Ferrick, alleging refusal to account and various other breaches by Ferrick of his obligations as a partner, and that, by reason of his conduct and of the inability of the partners to agree as to the management of the business and to carry it on harmoniously, the business of the partnership is deteriorating and will soon cease to be of value, and praying for an accounting, a re-

ceiver, a dissolution of the partnership, and a winding up of the business. In this suit Ferrick filed a counterclaim wherein he alleged that Barry and Joy wrongfully "terminated said business and destroyed the good will thereof," and prayed for damages.

In the first case the trial judge entered a final decree dismissing the bill. In the second case he entered a decree denominated interlocutory dissolving the partnership and ordering the receivers (who had been appointed on May 19, 1944) to wind up its affairs and to distribute its assets. Ferrick appeals from both decrees. The decree in the second case, although interlocutory in the sense that it did not end the litigation, was final in its effect of dissolving and liquidating the partnership, so that the appeal from it could be entered and can now be considered here. *Plumer* v. *Houghton & Dutton Co.* 277 Mass. 209, 212–213. *General Heat & Appliance Co.* v. *Goodwin,* 316 Mass. 3, 4–5. *Vincent* v. *Plecker,* 319 Mass. 560, 563–564. Both appeals are properly before us.

The evidence is reported at great length and has been fully considered in accordance with the rule that findings made by the trial judge upon oral evidence, where the appearance and manner of the witnesses are important elements in arriving at the truth, will not be reversed unless plainly wrong.

By the articles of copartnership Barry, Joy, and Ferrick associated themselves as equal partners (except as to contributions of capital) in the business of "coating and combining of all materials" for the period of five years from September 22, 1943, unless all parties should agree to an earlier termination. Joy and Ferrick were to receive stipulated salaries. The provision relative to the lease bound Barry to cause it to be executed for a term of two years commencing October 1, 1943, at a rental of $200 a month, with an option for a further term of three years at the same rental and a further option to purchase the property for $42,000 during the term or any renewal thereof.

The judge made detailed findings of fact, among which are, in substance, these: Barry was a dealer in machinery

and had a general knowledge of the operation of machines for coating and combining. Joy had knowledge and experience in coating and combining fabrics. Ferrick was a lawyer who had no experience in the business. In the coating and combining of fabrics each product presents an individual chemical problem which calls for special training, technical knowledge, and experience. Ferrick, however, represented that his friendship with certain persons close to the Government in Washington would be helpful in getting government contracts. It was understood that Ferrick would do the buying, selling, and solicitation of business; that Barry would endeavor to make contacts and advise as to the business generally; and that Joy would have charge of production. [1]   Within a month after the signing of the articles of copartnership Barry "began to manifest disappointment because Ferrick had not, in his opinion, exerted the energy and effort which he had promised and particularly because he had made no government contacts and had not obtained any government business. This feeling gradually grew more intense; so that by early November there was not only discord and disharmony but also hostility and antagonism." Barry and Joy insisted that Ferrick spend more time soliciting business and less time in the office. "Ferrick did not react very kindly to the suggestion. It soon became apparent that Ferrick's Washington contacts either did not exist or were not of the productive kind." By November relations had become so strained that Ferrick began to talk about buying out his partners. When operations at the plant had to be suspended for some days for lack of work "relations became so strained that talk of dissolution became inevitable." Ferrick resisted dissolution and refused to reduce his salary when Joy consented to reduce his. The relations of the partners continued to grow worse. In March, 1944, "because of diminishing business prospects" Joy relinquished his salary altogether, but Ferrick continued to draw his in

---

[1] Evidence of this understanding was competent as bearing upon the causes and degree of lack of harmony among the partners, even though the articles of copartnership did not expressly provide for this division of labor.

full, insisting upon his contract. Ferrick's conduct in other respects which need not be here related in detail gave to his partners just cause for dissatisfaction. Perhaps the most important of these respects was that Ferrick, although he was in general charge of the office and of the books and had the most complete knowledge of the daily transactions, appeared slow and reluctant in responding to reasonable requests from his partners for information on these matters. The trial judge sums up the situation in these words: "I find that the disagreements, misunderstandings and dissension existing between Ferrick and his partners were of a serious, irreconcilable and permanent character; that they had brought about a complete lack of confidence; and that such an ill will had been engendered as to render coöperation impossible. That while Ferrick was not dishonest in his dealings with the partnership business, his mannerisms manifested an assumption of preëminence in the firm; he was reluctant and slow in making full disclosures of his doings to his partners; he was wanting in spontaneous candor; he was indiscreet and created natural suspicion and distrust in the minds of his partners. I find that it was not reasonably practicable or equitable for Barry and Joy to continue to carry on the business in partnership with Ferrick and that they are justified in dissolving the partnership."

In addition to the foregoing findings, the judge found in reference to the proposed lease that in November, 1943, Ferrick asked Barry for the lease, which Barry had agreed to cause to be executed in behalf of the partnership; that in January, 1944, after the trouble between the partners had become acute, Barry definitely refused to procure the lease; that Barry and Joy do not want the lease for the two year term or for the further term of three years; that in spite of the dissensions of the partners, and (we may add) in spite of the fact that for considerable periods there was insufficient work to keep the plant fully occupied, the business was profitable; that a lease of the premises "would have been quite valuable to the partnership as a going business harmoniously carried on by the three partners"; but that "under the existing discordant conditions which

. . . would not only continue but would progressively get worse . . . the lease would probably have been a liability rather than an asset." The judge also found that Mrs. Barry was the owner of the real estate and did not find that it had been fraudulently conveyed to her by her husband as alleged by Ferrick.

The findings of the judge hereinbefore stated cannot be pronounced plainly wrong. They are well supported by evidence which it was within his province to believe.

It will be convenient to deal with the second case first. The decree dissolving the partnership and liquidating its affairs was right. The conduct of Ferrick had brought about a situation in which the business could no longer be carried on jointly in the manner contemplated by the articles of co-partnership. The other partners were not required to submit to Ferrick's domination or to continue in an atmosphere of non-coöperation, suspicion, and distrust, even though Ferrick was not actually dishonest, and even though substantial profits were being made. An enterprise organized on the principle of equality in proprietorship and management cannot be expected to realize its aims under such conditions. Even if the court may think that one partner could carry on successfully, if he were allowed to push aside the others, it ought not to sanction such an alteration in the agreed relations of the partners. See G. L. (Ter. Ed.) c. 108A, § 18 (e). The case comes within the provision of the uniform partnership act, G. L. (Ter. Ed.) c. 108A, § 32 (1) (d), that on application of a partner the court shall decree a dissolution whenever a partner "so conducts himself in matters relating to the partnership business that it is not reasonably practicable to carry on the business in partnership with him." See further, c. 108A, §§ 31 (2), 32 (1) (c), (f); *State Street Trust Co.* v. *Hall*, 311 Mass. 299, 301, 310; *Skolnick* v. *Greenburg*, 230 Mass. 359. *Lavoine* v. *Casey*, 251 Mass. 124, 127. Pertinent cases in other jurisdictions are *Whalen* v. *Stephens*, 193 Ill. 121, 143 (quoting from *Singer* v. *Heller*, 40 Wis. 544), *Lunt* v. *Van Gorden*, 224 Iowa, 1323, 1331, *Mayhew* v. *McGlothlin*, 269 Ky. 184, 186–187, *Fooks* v. *Williams*, 120 Md. 436, 440–441, *Steckroth* v.

*Ferguson,* 281 Mich. 279, 282–284, and *Herman* v. *Pepper,* 311 Penn. St. 104, 108–109. Compare *Bates* v. *McTammany,* 10 Cal. (2d) 697; *Potter* v. *Brown,* 328 Penn. St. 554, 560–563. Many cases are collected in 118 Am. L. R. 1421.

We cannot agree with Ferrick's contention that Barry and Joy, or either of them, was guilty of fraud, and that they do not come into court with clean hands. The trial judge did not find that Barry made any fraudulent conveyance to his wife, or any false representations to Ferrick, and the evidence does not convince us that he did. The bill of Barry and Joy contains some allegations of fact which perhaps might better have been more carefully limited to the proof at hand or stated as upon information and belief only, but these were largely matters of opinion or of deduction or of the interpretation of words, and Ferrick's own conduct had given just ground for suspicion. We find nothing showing that Barry and Joy were guilty of any dishonesty in making these allegations. These matters are too trivial and too remote from the crucial issues to preclude relief. *Lurie* v. *Pinanski,* 215 Mass. 229. *Warfield* v. *Adams,* 215 Mass. 506, 523–524. *Hopkins* v. *Flower,* 256 Mass. 367, 377–378. *New England Wood Heel Co.* v. *Nolan,* 268 Mass. 191, 197. *Service Wood Heel Co. Inc.* v. *Mackesy,* 293 Mass. 183, 189. *Samuel Hertzig Corp.* v. *Gibbs,* 295 Mass. 229, 231. *Satren* v. *Sponheim,* 199 Cal. 366, 368. *Comstock* v. *Morgan Park Trust & Savings Bank,* 367 Ill. 276, 280. *Connecticut Telephone & Electric Co.* v. *Brown & Caine, Inc.* 10 Fed. (2d) 823, 825.

We do not think that Barry's failure to procure the lease, even if it amounted to a technical breach of the articles of copartnership, renders his hands unclean, so that he cannot maintain a suit. A slight delay in furnishing the lease might well have been inadvertent and would have been of no consequence, since the partnership was actually occupying the premises. Not long after the signing of the articles of copartnership the conduct of Ferrick became such that Barry as a layman may well have believed himself justified in withholding the lease, if indeed he was not. There is nothing to show that Barry's conduct was fraudulent or inten-

tionally disregardful of legal obligations in a material matter connected with the issues in the case. *Barbrick* v. *Huddell,* 245 Mass. 428, 437. *New York, New Haven & Hartford Railroad* v. *Pierce Coach Lines, Inc.* 281 Mass. 479, 482. *Buckley & Scott Utilities, Inc.* v. *Petroleum Heat & Power Co.* 313 Mass. 498, 505–506. *MacCormac* v. *Flynn,* 313 Mass. 547, 549–550.

We return to the first case. The terms of the articles of copartnership as well as the circumstances under which they were made show clearly that the lease to Ferrick was not to be for his individual use but was to be held by him solely on a dry trust for the benefit of the partnership in which Barry, who agreed to procure the lease, was a partner. The parties contemplated the actual use of the premises by the partnership for the purposes of the partnership and not otherwise. Even if the title to the real estate had been in Barry himself, instead of in Mrs. Barry, we think the court in its discretion could properly have refused to compel him to grant the lease at a time when the partnership was being dissolved, when two of the three partners did not want the lease, when the only use that could have been made of it, if granted, would have been to offer it at a receiver's sale, possibly to the great damage of the owner, with rent accruing in the meantime, and when the receivers had manifested no desire to take on such a lease. But in fact the title to the real estate was in Mrs. Barry. Relief against her on any theory of breach of contract by her seems beyond the scope of the bill. At any rate, she was not a party to the sealed articles of copartnership, or to the covenant contained in them expressly binding her husband to "cause" the lease "to be executed." Even if Barry was, in general, her agent in respect to the real estate and acted with her knowledge, she is not bound by a sealed instrument not executed in her name and not purporting, or even, as we think, intended, to bind her or to have been made in her behalf. *Congress Construction Co.* v. *Worcester Brewing Co.* 182 Mass. 355, 358. *Seretto* v. *Schell,* 247 Mass. 173, 176. *Berman* v. *Rowell,* 274 Mass. 260, 268. *Exchange Realty Co.* v. *Bines,* 302 Mass. 93, 98–99. *Moran* v. *Manning,* 306 Mass. 404,

410–411. Even as to written instruments not under seal see *Byington* v. *Simpson*, 134 Mass. 169, 170–171; *Silver* v. *Jordan*, 136 Mass. 319; *Crawford* v. *Moran*, 168 Mass. 446; *Elwell* v. *State Mutual Life Assurance Co.* 230 Mass. 248, 252; *Pennsylvania Railroad* v. *Lord & Spencer, Inc.* 295 Mass. 179, 182–183; *Stern* v. *Lieberman*, 307 Mass. 77, 81; Am. Law Inst. Restatement: Agency, §§ 149, 151. Nor could Mrs. Barry ratify an instrument not purporting to be made and not actually made in her behalf. *New England Dredging Co.* v. *Rockport Granite Co.* 149 Mass. 381, 384. *Allen* v. *Liston Lumber Co.* 281 Mass. 440, 446, and cases cited. *Wedgwood* v. *Eastern Commercial Travelers Accident Association*, 308 Mass. 463, 468. Moreover, if specific performance of the covenant to give the lease would ever have been proper, it cannot be decreed now, after the expiration of the original term for which the lease was to have been given, and when it is impossible to say that the option to renew it would ever have been exercised. *Werden* v. *Graham*, 107 Ill. 169, 179. See *Nesbitt* v. *Meyer*, 1 Swanst. 223; *Walters* v. *Northern Coal Mining Co.* 5 De G. M. & G. 629.

In our opinion, therefore, the case of *Ferrick* v. *Barry* comes down to the question whether Barry is liable in damages for failure to procure the lease from Mrs. Barry for the benefit of the partnership. On the record before us we think that he is not liable. We assume, without deciding, that Barry's duty to procure the lease arose as soon as the copartnership articles were executed, and that he committed a technical breach of the articles in not procuring the lease before any conduct of Ferrick had occurred which would excuse Barry from performance. Even so, the right to have the lease was not the individual right of Ferrick. That right belonged to the partnership, which is now in liquidation by receivers. The liquidation will result ultimately in a full accounting among the partners. G. L. (Ter. Ed.) c. 108A, §§ 38, 40. It is difficult to understand on what ground Ferrick should be allowed in equity, while the suit in which the account will be taken is actually pending, to segregate and withdraw from the accounting a single item which is properly a part of the general account and to insist

upon a separate recovery of that item. See *Carr* v. *Silloway*, 105 Mass. 543; *Bancroft Trust Co.* v. *Canane*, 271 Mass. 191; *Zuckernik* v. *Jordan Marsh Co.* 290 Mass. 151; *Security Co-operative Bank* v. *McMahon*, 294 Mass. 399; *Downam* v. *Matthews*, Prec. Ch. 580. But this point has not been taken. Ferrick's claim for damages has been fully tried out and in the circumstances should be decided now.

The record is barren of any evidence which would enable a court to make any satisfactory finding of damages. The measure of damages would be at most the value of the leasehold after occupancy by the partnership ceased, less the rent to be paid, taking into account all uses to which the property was adaptable. *Townsend* v. *Nickerson Wharf Co.* 117 Mass. 501, 502. *Riley* v. *Hale*, 158 Mass. 240. *Neal* v. *Jefferson*, 212 Mass. 517, 522–523. *Nelson Theatre Co.* v. *Nelson*, 216 Mass. 30, 34–36. *Grennan* v. *Murray-Miller Co.* 244 Mass. 336, 339. *Parker* v. *Levin*, 285 Mass. 125, 128. Taylor, Landlord & Tenant (9th ed.) § 177. In this instance there could have been no additional special or peculiar damages of any kind, such for example as loss of profits, since the partnership actually occupied the premises at the agreed rental without a lease as long as the business continued and until the partnership and the business were terminated for reasons having nothing to do with the failure to obtain the lease. Compare *Kostopolos* v. *Pezzetti*, 207 Mass. 277, 280. The partnership therefore had every advantage it would have had if there had been a lease, except the advantage of counting the lease as an asset, if it would have been an asset instead of a liability, in liquidation. There is no acceptable evidence of the value of the leasehold, if indeed it would have had any value in the market. The property had remained idle for about six years before the articles of copartnership were signed. At most the lease would have run only about four more years. The only testimony offered by Ferrick was that of an expert witness who based his opinion solely upon the capital value that would commonly be deemed necessary to produce the profits actually realized at the plant. His estimate appears to take no account of the actual character, loca-

tion, and condition of the property itself or of the demand for it in the market or of the availability of other property for the desired purpose. Even under war conditions profits made in a particular enterprise by particular ·persons at a particular time cannot be taken as the sole measure of the value of a lease upon the plant where the enterprise is carried on. This method of valuation leads to a result which we can only describe as fantastic. The judge made. no direct finding as to the value of the proposed leasehold, but found only that it would have been "quite valuable" to the partnership as a going business, but that under the existing discordant conditions it would have been a liability instead of an asset. We do not deem ourselves sufficiently informed by the evidence to substitute any finding more favorable. to Ferrick.

The decrees appealed from are affirmed with costs to the defendants in the first case and to the plaintiffs in the second case, except that the decree in the second case is to be modified by the addition of a clause dismissing the counterclaim of Ferrick, the subject matter of which was fully covered at the hearing and is fully covered by this opinion.

*So ordered.*