van Gestel, J.
This matter is before the Court on cross motions for summary judgment on all counts to the complaint.

BACKGROUND

Involved are three essentially identical joint venture agreements executed in 1980 and 1981. The agreements were formed for the principal purpose of acquiring, operating and developing property located at 135-145 and 175 Ward Street, and 315 Charger Street in Revere, Massachusetts.
Although different at the beginning, for all purposes relevant to this case there are four joint venturers in each venture, as follows: the plaintiff, BPR Group Limited Partnership (“BPR”); and the defendants Richard K. Bendetson (“Bendetson”), Carson Revere, LLC (“Carson”) and CDE Revere, LLC (“CDE”). Each of the four current joint venturers has a 25% ownership interest in each of the three joint ventures.
For purposes of this decision, the significant language in each of the three joint venture agreements is identical. That language appears in Section 4 and Section 11, as follows:
4. Term. This Agreement shall commence as of the date hereof and shall continue and not be dissolved or terminated except as hereafter provided.
*594 11. Termination.
A. This Joint Venture shall terminate upon the first to occur of the following events:
1. Upon notice of any non-defaulting Member, if any other Member shall fail to perform his or its obligations hereunder and such default shall continue uncured for a period of at least sixty (60) days after written notice thereof from the party claiming such default; the party desiring to terminate under this provision shall, after the expiration of the sixty (60) period, give one (1) month’s written notice of his intention to terminate.
2. Upon the conveyance of all of the real estate comprising the Property.
3. At the option of any Member not in default within a reasonable time after notice that any other Member shall have had filed by or against him pursuant to a statute of the United States or of any statute, a petition in bankruptcy or insolvency or for the appointment of a receiver or trustee of all or a portion of such party’s assets and such other party fails within sixty (60) days to secure a discharge thereof, or if such other party shall make an assignment for the benefit of creditors or petition for or voluntarily enter into an arrangement for the benefit of creditors.
4. By mutual agreement of all of the Members.
There has been a falling out between BPR and Bendetson. The falling out, however, is not said to relate to any alleged failure by Bendetson to perform his obligations under any of the three joint venture agreements. Nevertheless, on December 22, 2003, BPR served written notice on the remaining three Members of each joint venture “that, pursuant to Massachusetts General Laws Chapter 108A, sec. 31(l)(b)” the particular joint venture “is hereby dissolved.”
Bendetson, Carson and CDE, pointing to Section 11 of the respective joint venture agreements and the fact that none of the four events of termination have occurred, decline to proceed with the asserted dissolution and consequent winding up of the joint ventures.
BPR’s complaint was filed on January 13, 2004. It seeks declaratory relief to the effect that each of the three joint ventures is dissolved; issuance of a decree of dissolution; an order that the defendants wind up the three joint ventures; and for an accounting from the defendants.

DISCUSSION

“Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law.” M.P.M. Builders, LLC v. Dwyer, 442 Mass. 87, 89 (2004); Kesler v. Pritchard, 362 Mass. 132, 134 (1972). Mass.R.Civ.P. Rule 56(c). Here, of course, all parties have moved for summary judgment, and all argue that there are no material facts in dispute that would prevent granting such judgment.
What is involved is the question of how a partnership, or its close cousin a joint venture, may be terminated. The SJC has spoken on this issue very recently in Anastos v. Sable, 443 Mass SJC #09252 (December 22, 2004); however, the issue before it there involved an attempted dissolution for cause, which is not what is presented here.
Both sides, and this Court, are comfortable applying Massachusetts partnership law to the three joint ventures under examination. After all, the difference between the two relationships is of no moment for the matters in issue here, and “nothing turns on the distinction.” Doiron v. Castonguay, 401 Mass. 705, 707 (1988). A partnership is “an association of two or more persons to carry on as co-owners of a business for profit.” G.L.c. 108A, sec. 6. See McMurtie v. Guiler, 183 Mass. 451, 452 (1903). A common incident of a partnership is that the members enter into an agreement to share profits and losses that may result from the use of capital, labor or skill. Boyer v. Bowles, 310 Mass. 134, 138 (1941). See also Kansallis Finance Ltd. v. Fern, 421 Mass. 659, 668 (1996).
A joint venture is similar, although usually the parties only get together for a single event or effort. See, e.g., Cardullo v. Landau, 329 Mass. 5, 8 (1952); Mendelsohn v. Leather Mfg. Corp., 326 Mass. 226, 233 (1950); Shain Invest. Co. v. Cohen, 15 Mass.App.Ct. 4 (1982)
BPR relies upon G.L.c. 108A, Sec. 31, which provides three ways in which a partnership may be dissolved: (1) without violation of the agreement, by the express will of any partner when no definite term or particular undertaking is specified; (2) in contravention of the agreement, where the circumstances do not permit a dissolution under any other provisions of section 31, by the express will of any partner at any time; and (3) by decree of court under Sec. 32.
Where a partnership agreement provides that the partnership is to continue indefinitely, and the partnership is therefore “at will,” a partner has the right to dissolve the partnership, and the dissolution occurs "(wjithout violation of the agreement between the partners.” G.L.c. 108A, Sec. 31(1) . . . In contrast, where the partnership agreement provides that the partnership is to continue for a definite term, a partner has merely the power to dissolve, and the dissolution occurs “[i]n contravention of the agreement between the partners.” G.L.c. 108A, Sec. 31(2).
Meehan v. Shaughnessy, 404 Mass. 419, 428-29 (1989). See also Anastos, supra, 443 Mass.
The defendants argue that Sections 4 and 11 of the three joint venture agreements prevent them from being an at-will relationship.
*595 The joint venture agreements are contracts. The interpretation of an unambiguous agreement is an issue of law for the Court. Lumbermans Mut Cas. Co. v. Zoltek Corp., 419 Mass. 704, 707 (1995). Contract language must be construed in its usual and ordinary sense. 116 Commonwealth Condominium Trust v. Aetna Cas. & Surety Co., 433 Mass. 373, 376 (2001); Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998). A contract provision is ambiguous “only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one.” Citation Ins. Co., supra, 426 Mass, at 381. The mere fact that parties disagree on the proper construction of contractual language, however, does not necessarily establish ambiguity. Dumbermans Mut Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 466 (1995).
Generally, “(t]he object of the court is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background and purpose.” USM Corp. v. Arthur D. Little Systems; Inc., 28 Mass.App.Ct. 108, 116 (1989). The Court must act in a way to give effect to an agreement as a rational instrument in order to carry out the intent of the parties. Starr v. Fordham, 420 Mass. 178, 192 (1990). Even in the case of an ambiguous agreement, interpretation is a matter of law for the Court except insofar as it may turn on facts in genuine dispute. Gross v. Prudential Ins. Co. of America, Inc., 48 Mass.App.Ct. 115, 119 (1999).
Justice, common sense and the probable intention of the parties upon consideration of the words in question are guides to the construction of a written contract. City of Haverhill v. George Brox, Inc., 47 Mass.App.Ct. 717, 720 (1999).
In construing the three joint venture agreements, the Court must give effect to the intentions of the parties, as expressed in the language employed, considered in the light of the context of the transaction and the purposes to be accomplished. Starr v. Fordham 420 Mass. 178, 190 (1995); Shea v. Bay State Gas Co., 383 Mass. 218, 224-25 (1981). Significantly here, the parties are sophisticated in the matters in issue and have had a long histoiy in the business at hand. While not necessarily controlling, the prior histoiy does serve to provide some illumination.
Analysis of Sections 4 and 11 of the joint venture agreements is required. Neither of those sections is in any way ambiguous. There are just four ways provided in the agreements that they may be terminated. None of those four events has occurred. Consequently, any attempt by BPR to effect a dissolution would be in breach of the agreements and could subject BPR to claims for damages by the remaining members. It is only when the agreements have “no definite term or particular undertaking . . . specified” that a person or entity in the position of BPR can cause a dissolution free of possible damage claims from the remaining members. See G.L.c. 108A, Sec. 31(l)(b).
G.L.c. 108A, Sec. 31(2) permits a dissolution in contravention of the agreement only “where the circumstances do not permit a dissolution under any other provision of th[at] section.” Section 31(2) does not apply here because the joint venture agreements do permit dissolution by the express language of Section 11 thereof.
G.L.c. 108A, Sec. 31(6) permits a dissolution by a decree of court under sec. 32. Section 32(l)(f) authorizes such a decree when there are “(o]ther circumstances which render a dissolution equitable.” The reach of this section has not been heavily litigated in Massachusetts. This Court has found only one case that provides any guidance, and the parties have cited to none. That one case is Ferrick v. Barry, 320 Mass. 217 (1946).
In Ferrick, at p. 222, the court said:
The decree dissolving the partnership and liquidating its affairs was right. The conduct of Ferrick had brought about a situation in which the business could no longer be carried on jointly in the manner contemplated by the articles of copartnership. The other partners were not required to submit to Ferrick’s domination or to continue in an atmosphere of non-cooperation, suspicion, and distrust, even though Ferrick was not actually dishonest, and even though substantial profits were being made. An enterprise organized on the principle of equality in proprietorship and management cannot be expected to realize its aims under such conditions. Even if the court may think that one partner could carry on successfully, if he were allowed to push aside the others, it ought not to sanction such an alteration in the agreed relations of the partners. See G.L. (Ter.Ed.) c. 108A, §18(e). The case comes within the provision of the Uniform Partnership Act, G.L. (Ter.Ed.) c. 108A, §32(l)(d), that on application of a partner the court shall decree a dissolution whenever a partner “so conducts himself in matters relating to the partnership business that it is not reasonably practicable to carry on the business in partnership with him.” See further, c. 108A, §§31(2), 32(l)(c), (f); . . .
Ferrick basically relies upon G.L.c. 108A, Sec. 32(l)(d), the section that permits a decree of dissolution when a partner conducts himself in a manner that makes conduct of the business not reasonably practical to carry on. The SJC does also cite to Sec. 32(1) (f), albeit without comment. This Court, therefore, reads sec. 32(l)(f) as permitting a decree of dissolution only after a factual hearing at which grounds that would make dissolution equitable are presented. That is not the situation presently before this Court. Thus, it returns to its examination of the language in the agreements before it.
*596 It is true that none of the four occasions supporting dissolution in the agreements has occurred, and none may ever occur. But if this Court were then to rule that the agreements are, for that reason, “at will,” and thereby terminable by any partner at any time, then the provisions of Sections 4 and 11 in the joint venture agreements will be rendered superfluous. A Court must interpret a contract in such away as to give effect to each of its provisions. McMahon v. Monarch Life Insurance Co., 345 Mass. 261, 264 (1962); S.D. Shaw & Sons, Inc. v. Joseph Rugo, Inc., 343 Mass. 635, 640 (1962). In order to do that here, the Court must read Sections 4 and 11 as providing sufficiently definite terms as to how the agreements are to be dissolved to make the agreements not at will.
In so doing, the Court does not intend to prevent BPR from seeking a decree of dissolution pursuant to G.L.c. 108A, secs. 32(l)(c), (d) or (fl.

ORDER

For the foregoing reasons, the defendants’ motion for summary judgment, (Paper #8), is ALLOWED, but only with regard to Prayer a. of the complaint as related to Counts I, II and III, and otherwise is DENIED; and the motion of the plaintiff, BPR Group, for summary judgment is DENIED, without prejudice to refiling pursuant to G.L.c. 108A, secs. 32(l)(c), (d) or (f) if a sufficient record can be assembled.