van Gestel, Allan, J.
This matter is before the Court on Plaintiffs’ Motion for Appointment of Receiver, Paper #6. The motion is opposed.
At issue is an intra-family contest, principally between two sisters, related to the Tosi family real estate interests in residential rental properties located on Bay State Road in Boston. The sisters are Luisa Tosi Claeys (“Luisa”), of Saratoga, California, and Linda Tosi (“Linda”), of Boston, Massachusetts.
Carlos Tosi (“Carlos”), the family patriarch, now 93 years old, principally, but with the assistance and support of his wife of 65 years, Velia Tosi, now 85 years old, after years of hard work, built up a small real estate empire focused on residential apartment buildings on Bay State Road in Boston. As Carlos began to advance in age, for estate planning and other purposes, he created two limited partnerships relating to what then remained of the properties on Bay State Road.
The Tosi Limited Partnership (“TLP”) was formed in June 2000. Carlos and Velia were the original General Partners, and the Limited Partners were Carlos, Velia, the Carlos H. Tosi 1997 Trust, the Velia N. Tosi 1989 Trust, Linda, Luisa, Tod Robert Tosi Minotti, Eric Claeys, Marc Minotti, Justin Claeys and Carla Claeys Rodriguez. TLP owns the buildings at 43, 45 and 47 Bay State Road.
The Tosi Limited Partnership 41 (“TLP 41”) was formed in May 2003. Carlos and Velia were the original General Partners, and the Limited Partners were Carlos, Velia, Linda, Luisa, Tod Robert Tosi Minotti, Marc Minotti, Eric Claeys, Justin Claeys and Carla Claeys Rodriguez. TLP 41 owns the building at 41 Bay State Road.
Luisa is the mother of Eric Claeys, Justin Claeys and Carla Claeys Rodriguez. All of Luisa’s children, who are adults, but Eric Claeys who lives in Missouri, live in California.
Linda is the mother of Tod Robert Tosi Minotti and Marc Minotti. Tod Minotti lives in Woodstock, Vermont and Marc Minotti lives in Lakewood, Colorado.
In August 2003, Carlos and Velia resigned as General Partners of TLP 41 and were replaced with Luisa and Linda. In April 2004, Carlos and Velia resigned as General Partners of TLP and were replaced with Luisa and Linda.
Luisa married in 1964 and moved away from Massachusetts. She is said to have resided in California “for years and rarely visits” Massachusetts. There is a suggestion — which has no bearing on this Court at this time — that Luisa and her family has been estranged and distant from the rest of the Tosi family.
Apparently, there now has developed a rift between Luisa and Linda over the management of TLP and TLP 41. This rift is said to have begun in April of 2006. While the complaint, and a supporting affidavit, purport to set forth a number of allegations of actions by Linda, and others, contrary to the wishes of Luisa, counter affidavits suggest a different point of view. In any event, there is no solid evidence before this Court, at this time, that the essence of the two limited partnerships — the ownership and management of the 41, 43, 45 and 47 Bay State Road properties — is in any danger of dissipation or collapse.
While there is a vast array of documentation in support of and in opposition to the motion to appoint a receiver, the foregoing paints a sufficient picture for present purposes.
DISCUSSION
This Court is faced, once again, with the unhappy and contentious difficulties that involve the second and third generations in, and benefitting from, a family enterprise apparently almost wholly created by the hard work of the family patriarch who, with his wife, delegated the enterprise to his two daughters.[3]
*232 The Court considers the plaintiffs’ claims in light of G.L.c. 109, Sec. 45. There, on application by a partner, the Court “may decree dissolution of a limited partnership whenever it is not reasonably practicable to carry on the business in conformity with the partnership agreement.” The mere discontent of some of the limited partners with the actions of one or the other of the general partners to manage the business does not provide proof of a reasonably practicable inability to carry on the business in conformity with the TLP and TLP 41 partnership agreements. The fact of disagreement among some of the limited partners and one or the other of the general partners and their challenges to some of the managerial practices, like similar kinds of disagreements that arise between beneficiaries and a trustee of a trust established to operate a company, are not sufficient bases for the exercise by the Court of the extraordinary power to dissolve the partnership. See Edinberg v. Cavers, 22 Mass.App.Ct. 212, 220-28 (1986). “The mere existence of hostility between beneficiaries and a trustee does not necessarily require removal of the trustee.” Shear v. Gabovitch, 43 Mass.App.Ct. 650, 688 (1997). See also Symmons v. O’Keefe, 419 Mass. 288, 295-96 (1995).
Here, however, the rift is not solely between limited partners and general partners, but also between the only two general partners. This presents a more serious situation. But this case is freshly filed, and the issue of dissolution under G.L.c. 109, Sec. 45 is not yet before the Court.
Consequently, the Court, at this time, must focus on the issue of the need for the appointment of a receiver pendente lite.
Luisa and her children point to Ferrick v. Barry, 320 Mass. 217 (1946), as providing strong support for a receivership. In Ferrick, after a trial on the merits on the ultimate issue of partnership dissolution, the SJC said, at p. 222:
An enterprise organized on the principle of equality in proprietorship and management cannot be expected to realize its aims under such conditions [an atmosphere of non-cooperation, suspicion, and distrust, even though [the offending partner) was not actually dishonest, and even though substantial profits were being made). Even if the court may think that one partner could carry on successfully, if he were allowed to push aside the others, it ought not to sanction such an alteration in the agreed relations of the partners.
This Court also is aware that a forced dissolution of a limited partnership may produce serious and unintended adverse consequences for the various partners. See, e.g., Procedures and Remedies in Limited Partners’ Suits for Breach of the General Partner’s Fiduciary Duty, 90 Harv.L.Rev. 763, 779-82 (1976-77).
What the foregoing portends for the ultimate result in this case depends, of course, upon the evidence presented at trial, or perhaps by deposition and other discovery. It is the reason, however, why the Court inserted footnote 3 above.
The Court now focuses on the issue at hand, the appointment of a receiver.
“[A] receivership must be thoroughly justified by the facts, is always to be considered a remedy of ‘last resort,’ and therefore is not often applied in practice.” . . . The test is one of reasonableness in the circumstances ... In general, the more indurated the problems and less likely that intermediate steps will work, the greater the justification for a receivership.
Judge Rotenberg Edu. Ctr., Inc. v. Commisioner of the Dep’t of Mental Retardation (No. 1), 424 Mass. 430, 463-64 (1997).
When speaking of a receivership over a corporation — which has similar consequences for a partnership — the SJC said:
[S]uch appointment rests in sound judicial discretion to be put forth only with circumspection. It should not be exercised except in cases where otherwise there would be wasting and loss of property which ought to be made available for payment of the debts of the corporation and which cannot be conserved in any other way so satisfactorily as by appointment of a receiver.
New England Theatres, Inc. v. Olympia Theatres, Inc., 287 Mass. 485, 492 (1934). See also, Nolan and Sartorio, Equitable Remedies, 31 M.P.S. sec. 188, p. 306.
Having considered the state of the record at this time, this Court declines to exercise its discretion and appoint a receiver, or to grant any alternative injunc-tive relief.
ORDER
For the foregoing reasons, the Plaintiffs’ Motion for Appointment of Receiver, Paper #6, is DENIED, without prejudice to re-application if discovery or investigation produces facts justifying such action.
This Memorandum and Order does not establish the law of this case.

The attorneys on both sides are urged to take off their hats as advocates and put on something more befitting counsellors in an effort to patch up, fairly to all, this unfortunate family squabble.