(279 P.3d 139)
No. 105,537

KELLY K. GILES, *Appellant*, v. GILES LAND COMPANY, L.P., NORMAN LEE GILES, DOLORES N. GILES, NORMAN ROGER GILES, LORIE GILES HORACEK, TRUDY GILES GIARD, AUDRY GILES GATES, JODY GILES PEINTNER, and JUDY GILES COX, *Appellees*.

Opinion filed June 15, 2012.

*Lynn D. Preheim* and *Brad A. Vining*, of Stinson Morrison Hecker LLP, of Wichita, for appellant.

*Jim H. Goering* and *Timothy B. Mustaine*, of Foulston Siefkin LLP, of Wichita, and *Kyler Kobbe*, of Cimarron, for appellees.

Before GREENE, C.J., GREEN and BUSER, JJ.

GREEN, J.: Kelly Giles (Kelly), a general partner in a family farming partnership, filed suit against the partnership and his partners, arguing that he had not been provided access to partnership books and records. The remaining members of the partnership then filed

a counterclaim requesting that Kelly be dissociated from the partnership. The trial court held that Kelly was not denied access to the partnership books and records. Kelly does not appeal from this decision. Moreover, the trial court held that Kelly should be dissociated from the partnership. Kelly, however, contends that the trial court's ruling regarding his dissociation from the partnership was improper. We disagree. Accordingly, we affirm.

The dispute in this case centers on a family owned and operated limited partnership, Giles Land Company, L.P. (partnership). On one side is the plaintiff, Kelly, the second youngest of seven children in the Giles family. On the other side are the defendants: the partnership; Norman Lee Giles and Dolores Giles, the mother and father of the seven children involved; and Kelly's six siblings: Norman Roger Giles (Roger), Lorie Giles Horacek, Trudy Giles Giard, Audry Giles Gates, Jody Giles Peintner, and Julie Giles Cox.

Kelly appeals from the trial court's judgment granting the counterclaim filed by the defendants, which included Norman and Dolores Giles along with their six other children, seeking the dissociation of Kelly from the partnership, under K.S.A. 56a-601. The trial court also denied Kelly's claim that the defendants had failed to provide him full access to the partnership records, but Kelly does not appeal that judgment.

The record reveals the following facts. The partnership was formed in the mid-1990's. One-half of the assets in the partnership came from a trust held for the benefit of the children of Norman and Dolores, and the other half of the assets came from Norman. Over the years, Norman and Dolores transferred interests in the partnership to their children. The ownership in the partnership is as follows:

| | General Partnership Interest | Limited Partnership Interest |
|---|---|---|
| Norman Lee Giles | 4.634500 | 03.3357145 |
| Dolores N. Giles | 4.634500 | 03.3357145 |
| Trudy Giles Giard | | 12.857143 |
| Norman Roger Giles | .243667 | 12.857143 |
| Audry Giles Gates | | 12.857143 |
| Jody Giles Peintner | | 12.857143 |
| Lorie Giles Horacek | .243666 | 12.857143 |

|  | General Partnership Interest | Limited Partnership Interest |
|---|---|---|
| Kelly K. Giles | .243667 | 06.185714 |
| Julie Giles Cox |  | 12.857143 |
| **Totals:** | **10.00%** | **90.00%** |

The general partnership interests held by Roger, Lorie, and Kelly were gifted to them by their parents.

The partnership owns both ranch land and farmland. This partnership is not the only Giles family business; there is also Giles Ranch Company and H.G. Land and Cattle Company. In 1999, Kelly was a partner in the Giles Ranch Company, but he became so overwhelmed with the debt he had incurred in the operations of the ranch company that he insisted that he be bought out of the ranch company and relieved of all debt. The other partners managed to buy out Kelly's interest in the ranch company. At the time of the lawsuit, Kelly only had an ownership interest in the partnership at issue, *i.e.*, Giles Land Company.

On March 26, 2007, the partnership held a meeting to discuss converting the partnership into a limited liability company. Kelly was unable to attend the meeting, but he later received a letter explaining the family's interest in converting the partnership to a limited liability company. Kelly did not sign the articles of organization for the proposed conversion and instead had his attorney request production of all of the partnership's books and records for his review. Kelly was not satisfied with the records that the partnership had provided, so he filed suit asking the court to force the partnership to turn over all of the documents he was requesting. In response, the defendants filed an answer and a counterclaim seeking to dissociate Kelly from the partnership.

After a 2-day trial, the trial court determined that the partnership had properly complied with the document requests. The trial court also held that Kelly should be dissociated from the partnership under K.S.A. 56a-601(e)(3) or, in the alternative, K.S.A. 56a-601(e)(1). The trial court found that due to Kelly's threats and the total distrust between Kelly and his family, it was not practicable to carry on the business of the partnership so long as Kelly was a partner.

*Did the Trial Court Err in Finding that Kelly Should Be Dissociated from the Partnership?*

On appeal, Kelly argues that the trial court erred in finding that he should be dissociated from the partnership under K.S.A. 56a-601(e)(3) or, alternatively, K.S.A. 56a-601(e)(1). Kelly contends that there was insufficient evidence to support dissociation under K.S.A. 56a-601(e).

Kelly's argument requires this court to interpret the language of K.S.A. 56a-601(e). The interpretation of a statute is a question of law over which an appellate court has unlimited review. *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010).

Additionally, Kelly's argument requires our review of the trial court's findings of fact and conclusions of law contained within its memorandum decision.

"The function of an appellate court is to determine whether the court's findings of fact are supported by substantial competent evidence and whether the findings are sufficient to support the court's conclusions of law. Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion. *U.S.D. No. 233 v. Kansas Ass'n of American Educators*, 275 Kan. 313, 318, 64 P.3d 372 (2003). An appellate court's review of conclusions of law is unlimited. *Nicholas v. Nicholas*, 277 Kan. 171, 177, 83 P.3d 214 (2004)." *Owen Lumber Co. v. Chartrand*, 283 Kan. 911, 915-16, 157 P.3d 1109 (2007).

K.S.A. 56a-601 states the following:

"A partner is dissociated from a partnership upon the occurrence of any of the following events:

. . . .

"(e) on application by the partnership or another partner, the partner's expulsion by judicial determination because:

(1) The partner engaged in wrongful conduct that adversely and materially affected the partnership business;

. . . .

(3) the partner engaged in conduct relating to the partnership business which makes it not reasonably practicable to carry on the business in partnership with the partner."

The trial court relied primarily on K.S.A. 56a-601(e)(3) to dissociate Kelly; therefore, the record must demonstrate that (1) Kelly engaged in conduct relating to the partnership business and (2)

such conduct makes it not reasonably practicable to carry on the business in partnership with Kelly. See K.S.A. 56a-601(e)(3).

Kansas' partnership statutes were dramatically changed on the enactment of the Kansas Revised Uniform Partnership Act in 1998, K.S.A. 56a-101 *et seq.* These changes brought about the concept of dissociation, which previously did not formally exist in our law. Thus, it is not surprising that our research has revealed no Kansas cases and very few cases from other jurisdictions that have discussed and applied the dissociation provisions of the Uniform Partnership Act 1997 (UPA). The statutory dissociation language in K.S.A. 56a-601(e) is very similar to the dissolution provisions set out in K.S.A. 56a-801(e). The comment to § 601 of the UPA, which is the source of K.S.A. 56a-601(e), confirms that the dissociation provisions were based on the preexisting grounds for dissolution under the UPA. See UPA § 601(5), comment. Consequently, case-law addressing the analogous UPA dissolution provisions is probative in analyzing the defendants' dissociation claim.

Kelly first contends that there is no evidence that he engaged in conduct relating to the partnership business. Kelly argues that the trial court erroneously relied on evidence that he had threatened his family members and that the familial relationship was broken. Kelly maintains that this evidence is not related to the partnership business and, therefore, it was not relevant.

Before we address Kelly's argument as to the trial court's use of this evidence in concluding that dissociation was proper, it is helpful to our review to set out some of the trial court's findings. Before the trial court addressed the question of whether Kelly should be dissociated from the partnership, it made numerous factual findings relating to certain conflicts between Kelly and the rest of his family members.

First, the trial court found that Kelly did not trust the other general partners and that he did not trust some of his sisters who are limited partners in the partnership. The trial court also found that the general partners as well as all of the other partners did not trust Kelly.

The trial court further found that the relationship between Kelly and the other family members was irreparably broken. In reaching

that conclusion, the trial court focused on a meeting between the partners in 2006. Kelly turned to each of the general partners and said that they would each die, in turn, and that he would be the last man standing and that he would then get to control the partnership. Although Kelly testified that this was not a threat and that he was simply trying to explain the right of survivorship, the trial court believed the testimony of the rest of the family that it was taken as a threat. The trial court also relied on evidence that Kelly had said that "paybacks are hell" and that he intended to get even with his partners. The trial court also found this to be a threat. Another fact that the trial court relied on in finding that the family relationship was irreparably broken was that it was impossible for any of the family members to communicate with Kelly regarding the partnership. Each family member testified that he or she believed that it was in the best interest of the partnership to not have Kelly remain a partner.

In finding that Kelly should no longer be a partner, the trial court stated:

"This court finds that the testimony of the counterclaimants regarding the plans of Kelly Giles to take over Giles Land Company, L.P., [the partnership], predicting the deaths of the other General Partners, the statement of Kelly Giles that 'paybacks are hell' and that he would get even, is credible. The Court finds that Kelly Giles' version of events as something close to the magnanimous savior of the family lacked credibility. The Court finds that Kelly Giles was not amenable to land acquisitions or working with the family . . . . The Court further finds that given the lack of trust between Kelly Giles and his siblings who are General Partners, the partnership cannot operate in a meaningful fashion, and certainly cannot operate as intended, as a family business where there is cooperation, as long as Kelly Giles is a partner in [the partnership]."

The trial court then turned to the issue of whether the standard for dissociation had been met. The trial court relied on K.S.A. 56a-601(e)(3), which, as previously noted, permits the court to grant dissociation if "the partner engaged in conduct relating to the partnership business which makes it not reasonably practicable to carry on the business in partnership with the partner." In relying on this subsection, the trial court correctly stated that there is no Kansas caselaw that directly addresses this subsection of the Kansas Revised Uniform Partnership Act. Thus, the trial court looked for

guidance from other jurisdictions to determine how the dissociation provisions should be applied.

The trial court relied on *Warnick v. Warnick*, 76 P.3d 316 (Wyoming 2003), to support its conclusion that K.S.A. 56a-601(e)(3) could be used in this case to dissociate Kelly. Similar to our case, in *Warnick* a dispute arose around a family ranch business and the Wyoming Supreme Court found that dissociation was appropriate. 76 P.3d at 322. To support its conclusion that dissociation was necessary, the court pointed to the fact that there had been heated disputes between the plaintiff and the defendants, including allegations of physical disputes. There was also evidence that the plaintiff had paid personal expenses out of the partnership checking account. The *Warnick* court applied the Wyoming equivalent of K.S.A. 56a-601(e)(3) to find that dissociation was proper. 76 P.3d at 322. In our case, the trial court relied on *Warnick* to show that K.S.A. 56a-601(e)(3) can be used for dissociation in appropriate circumstances.

Additionally, to support its argument that the trial court correctly applied K.S.A. 56a-601(e)(3), the defendants direct this court to consider *Brennan v. Brennan Associates*, 293 Conn. 60, 977 A.2d 107 (2009). In *Brennan*, the Connecticut Supreme Court applied the Connecticut equivalent of K.S.A. 56a-601(e)(3) to find that dissociation was appropriate. In *Brennan*, the dissociated partner appealed, arguing that the alleged misconduct used to dissociate him was not directly related to the partnership and, therefore, it was not relevant. The court noted that the term "relating to" has generally been given a broad meaning. 293 Conn. at 79-80. The *Brennan* court applied a totality of the circumstances approach in finding that the alleged misconduct was related to the partnership. The court explained that a 17-year-old conviction involving an unrelated enterprise likely would not meet the broad definition of related to, but when that evidence is combined with the other issues between the partners, the court found that dissociation was proper. 293 Conn. at 79-80. The *Brennan* court held that "an irreparable deterioration of a relationship between partners is a valid basis to order dissolution, and, therefore, is a valid basis for the alternative remedy of dissociation." 293 Conn. at 81.

Here, like in *Brennan*, Kelly argues that the evidence that the trial court relied on was not related to the partnership business. Reviewing the record as a whole, it is clear that the trial court found the evidence to be related to the partnership business because this was a family partnership and all of the alleged disputes were between family members in that partnership. It is also telling that both of the parents and all of the other siblings joined in this lawsuit seeking Kelly's dissociation. Clearly, the relationship between Kelly and his family was broken, and although Kelly attempted to argue that their personal issues were not interfering with the partnership, the trial court did not find his testimony to be credible.

In light of the animosity that Kelly harbors toward his partners and his distrust of them (which distrust is mutual), it is clear that Kelly can no longer do business with his partners and vice-versa. Indeed, the partnership has reached an impasse regarding important business because of a lack of communication between Kelly and his partners. The evidence indicated that most communications with Kelly had to be conducted through his attorney. Moreover, Kelly's statement predicting the deaths of his general partners, his statement that "paybacks are hell," and his statement that he would get even showed a naked ambition on his part to control the partnership, contrary to the interests of the other partners.

Although Kelly contended that some of these statements were wholly unrelated to the partnership in question, the trial court determined that Kelly's version of the events lacked credibility. Thus, the appropriate remedy under these circumstances is the dissociation of Kelly under K.S.A. 56a-601(e)(3). See *Covalt v. High*, 100 N.M. 700, 704, 675 P.2d 999 (Ct. App. 1983) (dissolution appropriate where partners reached an impasse over whether to increase rent on partnership property, although breach of fiduciary duty not proven); *Nupetco Associates v. Jenkins*, 669 P.2d 877, 883 (Utah 1983) (affirming trial court's dissolution of partnership where trial court found that partners could not agree on "method of, timing and of and means" of managing partnership affairs and partners could no longer work together amid atmosphere of dissension, although neither party proved a breach of the partnership agreement).

*Alternative Theory for Dissociation*

The trial court also found that there was enough evidence to dissociate Kelly under K.S.A. 56a-601(e)(1). This alternative ground also supports the trial court's decision. Again, there is no Kansas caselaw that applies this section of the Kansas Revised Uniform Partnership Act to provide us guidance on this issue.

Under this alternative theory of dissociation, the record must demonstrate (1) that Kelly engaged in wrongful conduct and (2) that the wrongful conduct adversely and materially affected the partnership business. See K.S.A. 56a-601(e)(1).

Kelly first argues that he did not engage in wrongful conduct towards his parents, Norman and Dolores. Kelly maintains that the evidence the trial court relied on was not supported by the record and also that it was not relevant. Kelly contends that because nothing in the record supports the trial court's finding that he engaged in wrongful conduct, he should not be dissociated under this section. Additionally, Kelly argues that even if his conduct was wrongful, it did not adversely or materially affect the partnership business. Kelly contends the record shows that the partnership continued to operate as it always had and that the partners failed to show how his conduct materially or adversely affected the business of the partnership.

In applying the alternative theory of dissociation, the trial court held the following: "In addition, Kelly Giles' conduct toward the General Partners who own the largest General Partnership interests by far, his parents, would also constitute wrongful conduct that materially affected the partnership business under 56a-601(e)(1), and the Court so finds."

As stated earlier, the *Brennan* court held that "an irreparable deterioration of a relationship between partners is a valid basis to order dissolution, and, therefore, is a valid basis for the alternative remedy of dissociation." 293 Conn. at 81. To support this conclusion, the *Brennan* court noted that one of the grounds for dissolution was identical to one of the grounds for dissociation, namely, that another partner has engaged in conduct relating to the partnership which makes it not reasonably practicable to carry on the

business in partnership with that partner. The court further held that the grounds for dissociation do not need to be construed more strictly than the grounds for dissolution. 293 Conn. at 82-83. The *Brennan* court then cited numerous dissolution cases that had similar issues as our case:

"See *Bertolla v. Bill*, 774 So. 2d 497, 503 (Ala. 1999) (Citing the following evidence when concluding that the trial court properly ordered dissolution on the ground that 'it was "not reasonably practicable" for them to remain in partnership . . . .' Every witness who was asked whether [the partners] could continue in partnership with each other answered that they could not. It is well settled that partners who cannot interact with each other should not have to remain bound together in partnership.' . . .). . .; *Ferick v. Barry*, 320 Mass. 217, 222, 68 N.E.2d 690 (1946) (Dissolution was proper on the ground that a partner ' "conducts himself in matters relating to the partnership business [and] that it is not reasonably practicable to carry on the business in partnership with him" ' when: 'The conduct of [the plaintiff partner] had brought about a situation in which the business could no longer be carried on jointly in the manner contemplated by the articles of co-partnership. The other partners were not required to submit to [the plaintiff's] domination or to continue in an atmosphere of non-cooperation, suspicion, and distrust, even though [the plaintiff] was not actually dishonest, and even though substantial profits were being made. . . .'). . .; see also *Cobin v. Rice*, 823 F. Supp. 1419, 1426 (N.D. Ind. 1993) (Finding that the partnership should be dissolved on the general equitable ground when '[t]he plaintiffs have presented sufficient evidence of ill-will, dissension, and antagonism between the partners to prove that the partners are unable to carry on the [p]artnership business to their mutual advantage. . . . Accordingly, as the [p]artnership business requires cooperation and harmony between the partners, which is clearly lacking, equitable dissolution of the [p]artnership is appropriate.') . . . ." *Brennan*, 293 Conn. at 81 n.14.

Like in the previously cited case of *Ferrick v. Barry*, 320 Mass. 217, 68 N.E.2d 690 (1946), Kelly had created a situation where the partnership could no longer carry on its business to the mutual advantage of the other partners. For example, Lorie testified that Kelly would berate and belittle Norman in an attempt to make Norman do what Kelly wanted. There was also testimony given by John Horacek, Lorie's husband, that in a phone conversation between Kelly and Norman, Kelly yelled and cursed at his father and his father was in tears by the end of the conversation. Norman further testified that it would be better for everyone if Kelly were no longer in the partnership because it was clear that Kelly did not agree with what the other partners were wanting to do with the

future of the partnership. Norman testified: " 'Cause I think the route we're on now, Judge, if we continue on this, and we don't—we're just at a standstill on what we plan to do." There was also evidence that Kelly had frustrated the partnership's opportunities to purchase more land. This evidence brings us back to the *Ferrick* case, where the court held that "[t]he other partners were not required to submit to [the plaintiff's] domination or to continue in an atmosphere of non-cooperation, suspicion, and distrust, even though [the plaintiff] was not actually dishonest, and even though substantial profits were being made." 320 Mass. at 222. That is the situation in this case. Kelly is clearly not cooperating with the other partners and the distrust between Kelly and his partners runs both ways. Thus, even though there is no evidence that Kelly has been dishonest, and even though the partnership has continued to be successful, this does not mean that the other partners should be forced to remain in partnership with an uncooperative and distrustful partner.

Because this is a family partnership, the evidence of Kelly making threats or berating his parents to get them to give him what he wants qualifies as wrongful conduct. None of the partners were able to interact or communicate with Kelly. Additionally, Norman clearly testified that the partnership was at a standstill because of the disputes between Kelly and the rest of the partners. This is evidence that Kelly was materially or adversely affecting the partnership. Moreover, this evidence is clearly enough to support dissolution based on the caselaw listed earlier; therefore, it is also sufficient for dissociation. Based on this evidence, we determine that the trial court properly held that Kelly could also be dissociated under K.S.A. 56a-601(e)(1).

Affirmed.