FILED

01/16/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0247

DA 23-0247

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2024 MT 4

BILLY ANN MERILA,

      Plaintiff and Appellee,

  v.

DANIEL BRIAN BURKE,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV-21-222
Honorable Jason Marks, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Clifford B. Irwin, Irwin Law Office, P.C., Missoula, Montana

      For Appellee:

      Martin Rogers, Emily Bruner, Worden Thane, P.C., Missoula, Montana

              Submitted on Briefs:  November 1, 2023

                      Decided:  January 16, 2024

Filed:

_____
             Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Daniel Brian Burke appeals the order of the Fourth Judicial District Court, Missoula County, expelling him from MBC Partnership ("MBC"), his partnership with Billy Ann Merila. We affirm the District Court's grant of summary judgment to Merila on the ground that it was no longer reasonably practicable to carry on the business of the Partnership.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2     Burke and Merila formed MBC in 1993. MBC owns one piece of real property in Missoula, which it rents to a single tenant for $3,500 per month. MBC is governed by a General Partnership Agreement ("Agreement"). The Agreement provides, in relevant part, that "[a] partner may be expelled from the partnership in the event he files bankruptcy, becomes insolvent, assigns his assets for the benefit of creditors, or assigns or otherwise encumbers his partnership interest or any partnership property without the consent of the other partner(s) in violation of this agreement." The Agreement includes a separate provision stating, "Any matters not specifically covered by this [Agreement] shall be subject to and construed in conformance with the Uniform Partnership Act."

¶3     In January 2021, Burke wrote Merila to inform her of several MBC updates. Burke told Merila that he filed a second MBC tax return for 2020 and that he intended to amend the 2019 MBC tax return, both of which Merila already had filed through an accounting firm. Burke also told Merila that he would be amending their capital accounts and possibly other accounting due to his belief that Merila withdrew capital from the partnership without his consent. Burke cautioned Merila from removing any capital from the partnership

2

account without his consent, stating that he did not trust her to exercise reasonable judgment. He advised Merila that he would be depositing rental receipts into a bank account over which Merila had no authority and that her authority to use MBC funds was limited to ordinary business expenses unless she obtained consent from him. Burke notified Merila that he would not be communicating with her and instead appointed a third-party agent to act on his behalf, whom he named as an authorized signor on the new MBC bank account. Burke requested Merila not interact with MBC's current tenant.

¶4 Merila filed an initial complaint seeking all remedies afforded under Montana's Uniform Partnership Act (UPA), including Burke's expulsion from MBC, based on Merila's belief that Burke threatened to falsify MBC's income on its tax returns and that he adversely and materially affected MBC and Merila's rights as a partner. She also moved for appointment of a receiver. Meanwhile, Burke—a certified public accountant (CPA)—was convicted on six charges in federal court, unrelated to MBC, of aiding and assisting tax fraud. He was sentenced to twenty-four months in prison, followed by a one-year period of supervised release.

¶5 After a show-cause hearing, the court issued an order denying Merila's motion to appoint a receiver but directing Burke to place all MBC funds in his personal possession into the original MBC checking account, ordering that Merila be granted direct access to that account, and instructing both parties to use the MBC account only for partnership purposes unless otherwise mutually agreed. The court also directed the parties to appoint a mutually agreed upon third-party CPA to complete MBC's tax returns.

¶6     Merila filed a motion for summary judgment, asserting that Burke should be expelled from the partnership for two reasons: (1) under § 35-10-616(5)(b), MCA, Burke willfully and persistently engaged in a material breach of the Agreement and breached his fiduciary duties to both Merila and MBC by unilaterally changing MBC's depository; and (2) under § 35-10-616(5)(c), MCA, Burke engaged in conduct that has made it not reasonably practicable for Merila to carry on the business in partnership with him. She also asserted that, should Burke be expelled, she is entitled to purchase his interest in MBC under the Agreement. Burke responded that the dissociation is not warranted, that any issues between the parties were resolved by the court's prior order, and that MBC was operating as it always had.

¶7     In its summary judgment order, the court relied on § 35-10-616(5)(c), MCA, which allows expulsion by judicial decree if a partner engaged in conduct that has made it not reasonably practicable for the other to carry on the business in partnership. Noting the Agreement's express reference to the UPA, the court applied the UPA provision because the Agreement's expulsion provision did not address Merila's assertions.

¶8     The District Court stated, "the undisputed record shows that Mr. Burke has engaged in several instances of conduct that would make it not reasonably practicable for Ms. Merila to carry on MBC with him as a partner." It found that Burke unilaterally created a new depository account, blocked Merila's access to that account, and took MBC's income from the First Interstate Bank of Missoula and deposited it into a new account—actions that Burke did not dispute during the hearing or in his response brief. The court found Burke's

4

undisputed actions to have violated the Agreement—which states, "[t]he depository may change from time to time as the partners may decide," and "[a]ny of the partners shall be authorized to draw checks on the partnership accounts,"—as Merila was not involved in Burke's decision to change the depository, nor was she given access to it. Additionally, Burke attempted to instruct Merila that she needed his consent to use MBC funds in any way except to pay ordinary business expenses, demanded that Merila not interact with MBC's tenant, and unilaterally appointed his son as an agent to act on his behalf in MBC matters against Merila's wishes. The court concluded that this conduct violated the express provision of the Agreement that states, "[a]ll partners of the partnership shall have an equal voice in the management and conduct of the partnership business. All such decisions shall be by majority vote of the [p]artners. . . ." "[P]erhaps most importantly," the court found, "[] Burke has refused to personally interact with [] Merila, beginning at least in January of 2021." Finally, given Burke's federal prison sentence for filing false tax returns, the court expressed concern that Burke acted unilaterally to file a 2020 tax return after Merila already had done so through an accounting firm and that he intended also to amend the 2019 tax return. The court concluded that "in addition to the existing distrust and interpersonal issues between the parties, [] Burke's incarceration further frustrates the practicable ability of the parties to carry on MBC as partners."

¶9 Addressing Burke's argument, the court found no dispute that MBC is operational but that operability is not the relevant standard. Instead, the standard is whether Burke engaged in conduct relating to MBC that made it not reasonably practicable for Merila to

carry on the business with him as a partner. The court determined that standard was satisfied; it was unreasonable to expect that Merila and Burke could practicably carry on together as business partners.

¶10 The court declined to address Merila's arguments under § 35-10-616(5)(b), MCA—that Burke willfully and persistently engaged in a material breach of the Agreement and breached his fiduciary duties to both Merila and MBC by unilaterally changing MBC's depository—because of its conclusion that Burke should be expelled from MBC by judicial decree under subsection (5)(c). Finding no material facts in dispute, the court thus granted Merila's motion for summary judgment and ordered that the parties negotiate a purchase price for Burke's interest in MBC.

## STANDARD OF REVIEW

¶11 We review a district court's grant or denial of summary judgment de novo, applying the criteria of M. R. Civ. P. 56. *Krajacich v. Great Falls Clinic, LLP*, 2012 MT 82, ¶ 8, 364 Mont. 455, 276 P.3d 922 (citation omitted). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Krajacich*, ¶ 8 (citation omitted). A district court's legal conclusions concerning the grant or denial of summary judgment are reviewed for correctness. *Krajacich*, ¶ 8 (citation omitted). We generally review as mixed questions of law and fact situations where the applicable law is undisputed and the issue is whether the facts satisfy the statutory standard. *Citizens Right to Recall v. State*, 2006 MT 192, ¶ 6, 333 Mont. 153,

6

142 P.3d 764 (citation omitted). We review mixed questions of law and fact de novo. *Citizens Right to Recall*, ¶ 6 (citation omitted).

## DISCUSSION

*Did the District Court err in determining that it was no longer reasonably practicable to carry on the business of the partnership?*

¶12 Montana has enacted the UPA as chapter 10 of Title 35, MCA. Section 35-10-101, MCA. "Montana law provides that when a partnership agreement exists, it controls the rights and duties of partners." *Krajacich*, ¶ 11 (quoting *In re Estate of Bolinger*, 1998 MT 303, ¶ 50, 292 Mont. 97, 971 P.2d 767); *accord* § 35-10-106(1), MCA ("a partnership agreement governs relations among the partners and between the partners and the partnership"). Montana's UPA controls when a partnership agreement is silent on an issue. *See* § 35-10-106(1), MCA ("To the extent the partnership agreement does not otherwise provide, this chapter governs relations among the partners and between the partners and the partnership.").

¶13 Section 35-10-616, MCA, identifies the events that cause a partner's dissociation from a partnership. Subsection (5) provides for "the partner's expulsion by judicial decree, made on application by the partnership or another partner," for one of the following reasons:

(a) the partner engaged in wrongful conduct that adversely and materially affected the partnership business;

(b) the partner willfully or persistently committed a material breach of the partnership agreement or of a duty owed to the partnership or the other partners under 35-10-405; or

7

(c) the partner engaged in conduct relating to the partnership business that made it not reasonably practicable to carry on the business in partnership with that partner.

Section 35-10-616(5), MCA. The District Court relied on subsection 5(c).

¶14 Burke maintains that his expulsion was unwarranted under that provision because MBC continues to be "fully operational" and was not harmed by Burke's conduct. Burke argues that because MBC incurred no damages, his actions "do not make it impracticable to run a partnership." Merila responds that the District Court applied the correct standard under § 35-10-616(5)(c), MCA, in concluding that Burke's conduct made it not reasonably practicable for Merila to carry on the business of the partnership with Burke.

¶15 In interpreting statutes like the UPA, the role of the court "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. Contrary to Burke's assertion, the plain language of the statute does not require proof that the partnership suffered damages or harm.

¶16 In *Pankratz Farms, Inc. v. Pankratz*, this Court considered a similar statutory standard for granting judicial dissolution of a partnership when it became impracticable for partners to conduct business with one another. 2004 MT 180, 322 Mont. 133, 95 P.3d 671. The business interests of a group of partners in the Pankratz family's farming and ranching enterprise fractured. *Pankratz*, ¶¶ 17-22. As a result, a portion of the partners split off and formed separate business entities, which deteriorated the partners' ability to communicate with each other and operate the partnership in agreement. *Pankratz*, ¶¶ 22-23. The partners

8

conducted two years of failed negotiations to buy out the interests of an estranged partner who refused to perform some of his partnership duties. *Pankratz*, ¶¶ 26-27. The estranged partner also refused to sign documents necessary for the partnership to secure federal funding, and he refused to vacate certain partnership property. *Pankratz*, ¶¶ 34, 37. We held that under the dissolution statute, § 35-10-624(5)(c), MCA, once the court determined it was not "otherwise reasonably practicable to carry on the partnership business in conformity with the partnership agreement," the statute "clearly require[d] [the partnership's] dissolution[.]" *Pankratz*, ¶¶ 49-51. The district court thus erred when it declined to order dissolution after it found that good cause existed to dissolve the partnership. *Pankratz*, ¶ 51.

¶17 Similar statutory language governs a partner's expulsion. In *Brennan v. Brennan Associates*, the Connecticut Supreme Court addressed the application of the same UPA provision governing expulsion of a partner. 977 A.2d 107 (Conn. 2009).[1] In *Brennan*, the plaintiff partner—previously convicted of felony tax fraud—sought to maintain himself as the sole signatory on the partnership's checks to exercise individual control over the finances of the partnership and "created an atmosphere of tension" among the partners by wrongfully accusing the other partners of fraud. *Brennan*, 977 A.2d at 116-17. On appeal, the plaintiff did not challenge the lower court's factual findings. *Brennan*, 977 A.2d at 118. Instead, he challenged the meaning of the standard for expulsion set forth in

---

[1] "We have referred to other jurisdictions when interpreting a 'uniform act' in order to 'effectuate the general purpose of making uniform the [law] among states enacting it.'" *S & P Brake Supply, Inc. v. STEMCO LP*, 2016 MT 324, ¶ 32, 385 Mont. 488, 385 P.3d 567 (quoting *McCone Cnty. Fed. Credit Union v. Gribble*, 2009 MT 290, ¶ 23, 352 Mont. 254, 216 P.3d 206).

Connecticut's UPA, which is substantively identical to Montana's. *Brennan*, 977 A.2d at 118-19.[2] The Connecticut Court held that the plaintiff partner's actions, including in part the fact that he had not been forthright about his prior fraud conviction, led to pervasive and entrenched animosity that made it impracticable for the defendant partners to carry on in business with him. *Brennan*, 977 A.2d at 120-22. The plaintiff partner's dissociation was the appropriate remedy. *Brennan*, 977 A.2d at 122.

¶18 The *Brennan* Court held that where "irreparable deterioration of a relationship between partners is a valid basis to order dissolution," it also is a valid basis for the alternative remedy of dissociation of a partner. *Brennan*, 977 A.2d at 120. It reasoned that the legal standard for dissolution of a partnership is identically worded to the grounds for expulsion of a partner. *Brennan*, 977 A.2d at 121. "Thus, there is no textual basis for imposing a higher burden of proof for dissociation than dissolution." *Brennan*, 977 A.2d at 121 (citations omitted). Both methods through which a partner may exit a partnership under Montana's UPA—dissolution or dissociation—similarly contain the "not reasonably practicable" standard. *See* § 35-10-616, MCA (dissociation); § 35-10-624, MCA (dissolution). "[I]dentical words used in different parts of the same act are intended to have the same meaning." *Sleath v. W. Mont. Home Health Servs.*, 2000 MT 381, ¶ 50, 304 Mont. 1, 16 P.3d 1042 (citation omitted); *see also U.S. v. Maciel-Alcala*, 612 F.3d 1092,

---

[2] Conn. General Statutes § 34-355(5)(c) ("A partner is dissociated from a partnership upon occurrence of any of the following events: (5) On application by the partnership or another partner, the partner's expulsion by judicial determination because (c) the partner engaged in conduct relating to the partnership business which makes it not reasonably practicable to carry on the business in partnership with the partner. . . . .").

1098 (9th Cir. 2010) ("It is a normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning").

¶19 Burke acknowledges on appeal that he "has refused to personally interact with Merila" and that there is a lack of trust between them. Burke's appellate brief points to facts that the District Court used in examining § 35-10-616(5)(c), MCA—namely that Burke unilaterally created a new depository account, told Merila not to interact with MBC's tenant, appointed an agent to act on his behalf, and unilaterally decided to file a second tax return for 2020. Burke largely admits those facts but contends instead that "[Merila] is more guilty than [Burke]." Burke mainly disagrees with the District Court's conclusion that his incarceration frustrated the practical ability of the parties to carry on MBC as partners because there were "no frustrations in the operation of the partnership." According to Burke, "all [MBC] needs to do" is "collect[] rent, pay[] bills, and make[] distributions to the partners." The District Court provided several reasons unrelated to Burke's conviction why Burke violated material portions of the Agreement. The record shows that the court did not err in determining that it was no longer reasonably practicable for Merila to continue in the partnership with Burke.

¶20 As the applicable law is undisputed here, the issue is whether the facts satisfy the statutory standard. *Citizens Right to Recall*, ¶ 6. To defeat summary judgment, Burke, the nonmoving party, must establish that a genuine issue of material fact exists. *Roe v. City of Missoula*, 2009 MT 417, ¶ 14, 354 Mont. 1, 221 P.3d 1200. "A material fact is a fact that involves the elements of the cause of action or defenses at issue to an extent that

11

necessitates resolution of the issue by a trier of fact." *Roe*, ¶ 14 (citation omitted). The party opposing a motion for summary judgment has an obligation to respond with specific facts showing that a genuine issue for a factfinder exists; different interpretations do not raise a genuine issue of material fact. *State ex rel. Scanlon v. National Ass'n of Ins. Comm'rs*, 265 Mont. 184, 188-89, 875 P.2d 340, 343 (1994). As the District Court correctly observed, Burke raises factual disputes that are not material. Whether MBC could continue to collect rent and pay its bills does not inform whether Burke and Merila reasonably could continue to operate as partners in the business. Burke has not provided this Court with specific facts showing a genuine issue of material fact. The District Court correctly determined that the undisputed facts satisfied the statutory standard to expel Burke from the partnership.

**CONCLUSION**

¶21   The District Court correctly applied § 35-10-616(5), MCA. With no genuine issues of material fact, Merila is entitled to judgment as a matter of law. We affirm the court's order granting Merila's motion for summary judgment.

/S/ BETH BAKER

We Concur:

/S/ JIM RICE
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ LAURIE McKINNON