NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2312-22

AC OCEAN WALK, LLC, d/b/a
OCEAN CASINO RESORT,

    Plaintiff-Respondent,

v.

BLUE OCEAN WATERS, LLC,
PIYUSH VIRADIA, and
JITEN PARIKH,

    Defendants-Appellants.

_____

APPROVED FOR PUBLICATION

May 28, 2024

APPELLATE DIVISION

Argued April 9, 2024 – Decided May 28, 2024

Before Judges Sumners, Smith[1] and Torregrossa-O'Connor.

On appeal from an interlocutory order of the Superior Court of New Jersey, Chancery Division, Atlantic County, Docket No. C-000006-21.

Ahmed A. Massoud argued the cause for appellants (Massoud & Pashkoff, LLP, attorneys; Ahmed A. Massoud, on the briefs).

Gilbert L. Brooks argued the cause for respondent (Duane Morris LLP, attorneys; Gilbert L. Brooks,

---

[1] Judge Smith did not participate in oral argument. He joins the opinion with counsel's consent. R. 2:13-2(b).

James Robert Hearon and Justin G. Mignogna, on the brief).

The opinion of the court was delivered by

SUMNERS, JR, C.J.A.D.

In this interlocutory appeal, defendants Blue Ocean Waters, LLC and its members Piyush Viradia and Jiten Parikh seek to vacate two orders of the Chancery court. First, its January 18, 2023 order granting partial summary judgment to plaintiff AC Ocean Walk, LLC to judicially dissociate Blue Ocean Waters and dissolve the parties' partnership agreement under the Uniform Partnership Act (UPA), N.J.S.A. 42:1A-1 to -56. Second, its March 13, 2023 order denying defendants' motion for reconsideration and amending the partial summary judgment order to reflect that the partnership had dissolved on October 10, 2020.

We affirm the January 18, 2023 order granting judicial dissociation and dissolution of the parties' partnership agreement. Defendants' failure to respond to AC Ocean Walk's September 30, 2020 notice of breach of the agreement is a clear indication that judicial dissociation was appropriate under N.J.S.A. 42:1A-31(e) as "it [was] not reasonably practicable to carry on the business in partnership with the partner." Although no case law in our State has interpreted the "not reasonably practicable" standard for judicial dissociation of a partner,

our conclusion is supported by the interpretation of like statutes in other jurisdictions.

We, however, reverse the March 13, 2023 order by amending the effective date of the dissociation and dissolution to coincide with the date of the January 18, 2023 order. Based on the record before us and the plain language of N.J.S.A. 42:1A-39(e)(3), judicial dissolution occurs when there "is a judicial determination that . . . it is not otherwise reasonably practicable to carry on the partnership business in conformity with the partnership agreement." Again, in the absence of our State's case law defining the effective date of dissociation and dissolution under N.J.S.A. 42:1A-39(e)(3), our conclusion is supported by the interpretation of like statutes in other jurisdictions.

I

In January 2018, AC Ocean Walk acquired ownership of the Ocean Casino Resort (casino), the former Revel Casino Resort, in Atlantic City. At the time, IDEA Boardwalk LLC's (IDEA) lease of the casino's nightclub and daytime beach club (collectively, the clubs) was still in effect despite the clubs' closure in 2014 and dormant status for three-and-a-half years thereafter. AC Ocean Walk agreed with IDEA to purchase the clubs' lease rights for $8 million, with

$3 million to be paid upfront and the remainder to be paid in five annual $1 million installments.

On April 11, 2018, AC Ocean Walk formed a partnership agreement with Blue Ocean Waters, which among other terms, provided it would operate the clubs and the parties would equally own the clubs' "assets plus any future . . . enhancements and/or additions to the clubs." To help cover the purchase of the clubs' lease, Blue Ocean Waters agreed to pay one third of the $3 million upfront costs and, thereafter, pay half of any year's shortfall when the clubs' revenues did not fully cover the $1 million annual payment obligation. Blue Ocean Waters also "agreed to fund all renovations and capital costs to" the clubs and "pay [fifty percent] of the pre-opening costs." Blue Ocean Waters further agreed to "prepare an annual budget" for AC Ocean Walk's approval.

On June 28, 2018, the clubs reopened. Over the next two years, the parties disagreed over numerous issues — renovation costs, the validity of various invoices to contractors, personnel, use of partnership assets, recordkeeping and accounting, and control over the clubs.

Seeking resolution, AC Ocean Walk, on September 29, 2020, sent defendants a notice of breach dated September 30, 2020. The notice stated Blue Ocean Waters had "breached its material obligations under" the agreement "for

4

some time" and the agreement would terminate if Blue Ocean Waters did not cure the breach within ten days. Specifically, AC Ocean Walk alleged Blue Ocean Waters: (1) did not contribute its half of the capital expenditures incurred through July 2020; (2) did not pay off a lien "incurred in connection to preopening capital expenditures"; (3) did not contribute its half of the annual settlement payments in 2019 and 2020 (when the clubs did not generate enough revenue to cover the payments); (4) never submitted an annual budget for plaintiff's approval; and (5) did not cover its half of the partnership's losses from June 2018 to July 2020. AC Ocean Walk claimed Blue Ocean Waters owed it $2,439,296.

Defendants did not respond to the notice. So, on February 10, 2021, AC Ocean Walk filed a Chancery Division complaint against defendants, seeking: damages for breaches of contract and the duty of good faith and fair dealing; judicial dissociation of Blue Ocean Waters from the partnership under N.J.S.A. 42:1A-31(e) and dissolvement of the partnership under N.J.S.A. 42:1A-39(e); and piercement of Blue Ocean Waters' corporate veil to hold Viradia and Parikh personally liable for plaintiff's damages. Defendants answered the complaint and raised several counterclaims, which are not relevant to this appeal.

In August 2022, while discovery was progressing, AC Ocean Walk asked defendants whether it should allocate partnership profits to Blue Ocean Waters when filing the partnership's 2021 tax returns. Defendants responded the next day relaying that they believed the partnership "remain[ed] in full force and effect" and AC Ocean Walk "must file tax returns for 2021 allocating the profits/income generated from the clubs to the parties equally, and AC Ocean Walk LLC cannot file a tax return designating all such gains to itself only." AC Ocean Walk complied with the request.

At the close of discovery, defendants moved for partial summary judgment on liability regarding their breach of contract counterclaim. AC Ocean Walk cross-moved for summary judgment on all issues. Following oral argument, the court reserved judgment, and on January 18, 2023, issued an order and written decision denying defendants' motion, granting AC Ocean Walk's cross-motion as to judicial dissociation of Blue Ocean Waters from the partnership and termination of the partnership based on the parties' mutual agreement to terminate the partnership, and denying AC Ocean Walk additional relief because there was a genuine issue of material facts.

The court determined defendants' non-response to the notice of breach warranted judicial dissociation under N.J.S.A. 42:1A-31(e)(3) because they

"had an inescapable obligation to respond," even if they simply denied AC Ocean Walk's allegations. The court based its determination on two undisputed facts:

> (1) Defendants received a notice of breach informing them that a failure to cure within ten . . . days would terminate the partnership; [and] (2) [d]efendants, upon receipt of this notice, failed to respond and went silent on their partner until litigation was filed and they were forced to respond roughly four . . . months later.

The court found instructive Sebring Associates v. Coyle, 347 N.J. Super. 414, 422-23, 430 (App. Div. 2002), because the defendant there was "invited into a partnership . . . for the primary purpose of securing additional funding," like Parikh and Viradia, and later ignored the partnership's calls for additional capital contributions. The court likened defendants' silence towards the notice of breach to the Sebring defendant's failure to answer capital calls.

The court additionally cited the UPA provisions governing the dissolution of partnerships, which related to the dissociation of a partner. First, the court observed, the partnership was for a definite term or particular undertaking, which dissolves if a partner wrongfully dissociates from the partnership. N.J.S.A. 42:1A-39(b). Wrongful dissociation occurs if a court orders a partner's dissociation under N.J.S.A. 42:1A-31(e) before the expiration of the term or the completion of the undertaking. N.J.S.A. 42:1A-32(b). N.J.S.A. 42:1A-31(e), in

turn, permits a court to order dissociation if a "partner engaged in conduct relating to the partnership business which makes it not reasonably practicable to carry on the business in partnership with the partner."

The court established a wrongful dissociation date of October 10, 2020, ten days after defendants received but did not respond to AC Ocean Walk's notice of breach. AC Ocean Walk's remaining claims and defendants' counterclaims were transferred to the Law Division for trial because the court found the claims involved a genuine dispute of material facts.

Defendants moved for reconsideration of the order as to judicial dissociation and dissolution. Following oral argument, the court reserved judgment, and later issued an order and written decision denying reconsideration and supplementing its summary judgment order. The court retroactively determined the partnership dissolved on October 10, 2020, the date it previously determined Blue Ocean Waters dissociated from the partnership when defendants failed to respond to the notice of breach.

Defendants appealed, seeking reversal of the Chancery court's summary judgment and reconsideration orders. We questioned whether the orders constituted a final judgment appealable as of right. R. 2:2-3; R. 2:5-1.

Defendants moved for leave to appeal, <u>R.</u> 2:2-4 and <u>R.</u> 2:5-6(a), which we granted, and subsequently denied AC Ocean Walk's motion to dismiss.

II

We must first decide whether the Chancery court erred in dissociating Blue Ocean Waters and dissolving the partnership. We conclude there was no error. Applying our de novo standard of review, summary judgment was appropriate because there were no genuine issues of material facts and, as a matter of law, the parties' partnership agreement should have been judicially dissociated and dissolved because Blue Ocean spurned its obligation to respond to the notice of breach. <u>See</u> <u>R.</u> 4:46-2(c); <u>RSI Bank v. Providence Mut. Fire Ins. Co.</u>, 234 N.J. 459, 472 (2018) (setting forth the summary judgment standard). We review an order denying reconsideration for abuse of discretion. <u>Cummings v. Bahr</u>, 295 N.J. Super. 374, 389 (App. Div. 1996). "An abuse of discretion arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." <u>Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment</u>, 440 N.J. Super. 378, 382 (App. Div. 2015) (internal quotation marks omitted) (quoting <u>Flagg v. Essex Cnty. Prosecutor</u>, 171 N.J. 561, 571 (2002)).

## A. Judicial Dissociation

Under the UPA, a partner wrongfully dissociates from "a partnership for a definite term or particular undertaking" if a court orders the partner's dissociation. N.J.S.A. 42:1A-32(b)(2)(b). A court may judicially dissociate the partner if it determines "the partner engaged in conduct relating to the partnership business which makes it <u>not reasonably practicable</u> to carry on the business in partnership with the partner." N.J.S.A. 42:1A-31(e)(3) (emphasis added). A partnership not at-will, as is the case here, is subject to judicial dissolution where the court finds that "it is <u>not otherwise reasonably practicable</u> to carry on the partnership business in conformity with the partnership agreement[.]" N.J.S.A. 42:1A-39(e)(3) (emphasis added). No case law in our State has interpreted the UPA's standards of "not reasonably practicable" for the judicial dissociation of a partner or "not otherwise reasonably practicable" for the judicial dissolution of a partnership.

That said, because the Revised Uniform Partnership Act (RUPA)[2] was adopted and codified in New Jersey as the UPA, our courts may "consider the law of other jurisdictions that have enacted similar provisions" based on RUPA.

---

[2] <u>Unif. P'ship Act</u> (Unif. L. Comm'n 2013).

Motorworld, Inc. v. Benkendorf, 228 N.J. 311, 325 n.4 (2017). Considering N.J.S.A. 42:1A-31(e)(3) nearly mirrors RUPA § 601(5)(C),[3] we examine how other states have applied the latter provision. Montana, Connecticut, and Kansas have addressed what circumstances satisfy the "not reasonably practicable" standard, applying them identically to issues involving dissociation and dissolution.

In Brennan v. Brennan Associates, the Connecticut Supreme Court considered the applicability of state statutes, Conn. Gen. Stat. § 34-355(5)(C) and § 34-372(5)(B), regarding judicial dissociation and judicial dissolution, respectively, which were modeled after RUPA. 977 A.2d 107, 121-22 (Conn. 2009). Reasoning "the concept of dissociation is a relatively new one under Connecticut law, the court was guided in its decision by case law addressing the more established, and in its view analogous, standard for dissolution." Id. at

---

[3] RUPA § 601(5)(C) states:

> A person is dissociated as a partner when . . . on application by the partnership or another partner, the person is expelled as a partner by judicial order because the person . . . has engaged or is engaging in conduct relating to the partnership's business which makes it not reasonably practicable to carry on the business with the person as a partner.

117-18. The court concluded the same burden of proof applied to determine dissociation and dissolution because both statutes set forth a "not reasonably practicable" standard. Id. at 121. The court affirmed the trial court's order of dissociation because there was "an irreparable deterioration of a relationship between partners" due to a combination of the plaintiff's conviction related to his partnership conduct, his false accusation that his partners committed insurance fraud, and his efforts to exclude his partners from control of the business. Id. at 119-20.

In Merila v. Burke, the Montana Supreme Court considered state statute Mont. Code Ann. § 35-10-616(5)(c), which allows judicial dissociation of a "partner engaged in conduct that has made it not reasonably practicable for the other to carry on the business in partnership." 541 P.3d 770, 772-73 (Mont. 2024). The court upheld the district court's summary judgment order dissociating the defendant from the partnership because there were "no genuine issues of material fact, [the plaintiff] is entitled to judgment" under Section 35-10-616(5). Id. at 776. The court concluded it was appropriate for the district court to expel the defendant because the record confirmed the district court's finding that the defendant "refused to personally interact with" the plaintiff, the partners did not trust each other, and the defendant's incarceration further

impeded the parties' ability to conduct the partnership. Id. at 773, 776. The court cited a previous opinion where it concluded it was not reasonably practicable for a partnership to continue after the partners lost the "ability to communicate with each other and operate the partnership in agreement," as evidenced by an estranged partner refusing "to perform some of his partnership duties" or "to sign documents necessary for the partnership to secure" financing. Id. at 774 (citing Pankratz Farms, Inc. v. Pankratz, 95 P.3d 671, 676-78, 680-81 (Mont. 2004)). The court further relied on Brennan for its recognition "that the legal standard for dissolution of a partnership is identically worded to the grounds for expulsion of a partner." Id. at 775 (citing Brennan, 977 A.2d at 121).

In Giles v. Giles Land Co., L.P., the Kansas appellate court applied the same reasoning as Brennan to hold a trial court did not err in dissociating a plaintiff partner where the evidence established his conduct would justify dissociation under Kan. Stat. Ann. § 56a-601(e)(3), N.J.S.A. 42:1A-31(e)(3)'s counterpart.[4] 279 P.3d 139, 144 (Kan. Ct. App. 2012). The appellate court

---

[4] Kan. Stat. Ann. § 56a-601(e)(3) provides, "[a] partner is dissociated from a partnership upon the occurrence of any of the following events: . . . the partner engaged in conduct relating to the partnership business which makes it not reasonably practicable to carry on the business in partnership with the partner."

concluded the trial testimony supported the trial court's credibility findings that the plaintiff "can no longer do business with his partners and vice-versa," causing "the partnership [to reach] an impasse regarding important business because of a lack of communication between [the plaintiff] and his partners." Id. at 144-45.[5]

We conclude the sound reasoning applied by the Connecticut, Montana, and Kansas courts in interpreting their judicial dissociation statutes, which mimic N.J.S.A. 42:1A-31(e)(3), should be followed to judicially dissociate Blue Ocean Waters from its partnership with AC Ocean Walk. These statutes all follow the RUPA model, which authorizes judicial dissociation when it is not reasonably practicable for a partner to carry on the partnership business due to another partner's conduct. The trial court's summary judgment order to dissociate Blue Ocean Waters was due to Blue Ocean Waters' singular act of refusing to respond to AC Ocean Walk's notice of breach. While the noted other jurisdictions did not rely upon a singular act to dissociate a partner, Blue Ocean Waters' conduct in not responding to the notice of breach warrants dissociation

---

[5] The court also affirmed the trial court's holding the plaintiff could also be dissociated under Kan. Stat. Ann. § 56a-601(e)(1) for "engag[ing] in wrongful conduct" that "adversely and materially affected the partnership business." Giles, 279 P.3d at 144-46.

because it evinces: "an irreparable deterioration of [the partnership] relationship," Brennan, 977 A.2d at 120; a "refus[al] to personally interact with" AC Ocean Walk, Merila, 541 P.3d at 773; and "an impasse regarding important business because of a lack of communication between [the] partners," Giles, 279 P.3d at 144.

Defendants unpersuasively argue the trial court misapplied Sebring to justify dissociation. They argue that in Sebring, this court affirmed the trial judge's dissociation order, which was based on credibility determinations following trial that the defendant breached the partnership agreement by not complying with a capital call and performing other intentional acts making it difficult to carry on the business. See 347 N.J. Super at 430. Defendants point out that unlike in Sebring, the trial court here did not find they breached the partnership agreement, leaving that determination for trial. While that distinction is accurate, it misses the mark of the trial court's reliance on Sebring. The court did not find Sebring to be "dispositive, [but it] is analogous to the present matter." We agree. Like the other noted jurisdictions, the operative fact in Sebring involves a partner whose conduct harmed the partnership and made it unfeasible for the remaining partners to continue running a business with him. Ibid. The specific nature of defendants' conduct is immaterial to the court's

reliance on <u>Sebring</u>. The significant point is that defendants' refusal to respond to the notice of breach after two years of unquestionable discord in the partnership "prejudicially [affected] . . . the business and made it impracticable for" the partnership to continue. <u>Id.</u> at 431 (quoting <u>Hansford v. Maplewood Station Bus. Park</u>, 621 N.E.2d 347, 351 (Ind. App. 1993)). The court did not find, nor do we need to conclude, that defendants breached specific terms of the partnership agreement to judicially dissociate Blue Ocean Waters. Defendants' failure to respond to the notice of breach was the focal point in realistically concluding the partnership was over. Given there was no dispute that Blue Ocean Waters did not respond to the notice to breach, summary judgment was appropriate.

For a partnership to exist and thrive, the partners need to communicate to resolve issues that are intrinsic to their business. Defendants' failure to do so is a clear indication that judicial dissociation is appropriate as "it [is] not reasonably practicable to carry on the business in partnership with the partner." N.J.S.A. 42:1A-31(e). The trial court did not abuse its discretion in rejecting defendants' reconsideration arguments regarding dissociation.[6]

---

[6] Defendants argued AC Ocean Walk:

B. Dissolution

In deciding their reconsideration motion, defendants argue the trial court erred in dissolving the partnership based on their concession that the partnership had ended. They assert they never conceded the partnership "had already terminated," claiming they merely stated the partnership "[s]hould be dissolved." To substantiate their position that the parties continued to act as though the partnership existed, they point to the partnership's 2021 tax filings, when AC Ocean Walk complied with their August 2022 request to allocate their share of partnership income. Defendants contend "summarily expelling" them from the partnership based on "nothing more than a simple failure to reply to a [disputed] demand for payment" constituted "unwarranted forfeiture" of its

refus[ed] to enter into a lease for the clubs with the partnership; misappropriat[ed] . . . partnership funds; . . . use[d]. . . partnership assets for its own exclusive benefit [without authorization]; total[ly] exclu[ded] . . . Blue Ocean [Waters] from any participation in the partnership's management and affairs; and fraudulent[ly] allocat[ed] . . . its own costs, expenses and employee wages to the partnership, but to name a few [actions which] ha[ve] made it not practical, if not outright impossible, for the parties to continue as partners.

partnership interest. Because the record does not support defendants' arguments, we discern no abuse in discretion in the court's reasoning.

In its summary judgment decision dissolving the partnership, the trial court cited the parties' admission at oral argument that the partnership was terminated. In response to the court's inquiry, "[i]f . . . we've all agreed that this partnership is dissolved," defense counsel replied "[s]hould be dissolved." AC Ocean Walk's counsel agreed. In its reconsideration decision, the court cited the summary judgment argument transcripts to affirm the parties' admission that the business relationship ended. The court held, "the [p]artnership at this juncture is unsalvageable and no longer exists," thus, business could be wound up and terminated. It seems clear that defendants conceded the partnership with AC Ocean had run its course.

Yet, assuming there was no such concession, the court's orders remain on solid ground because defendants' concession was not the primary factor in the court's dissolution order. Defendants' conduct in not responding to the notice of breach was the main thrust of the court's dissolution decision based on N.J.S.A. 42:1A-39(e)(3), which allows judicial dissolution under the same "not reasonably practicable" standard that applies to the dissociation of individual partners. See Brennan, 977 A.2d at 121; Merila, 541 P.3d at 775. When a

partnership dissolves, it continues to exist "only for the purpose of winding up its business," after which the partnership terminates. N.J.S.A. 42:1A-40(a); N.J.S.A. 42:1A-41(c) (setting forth the required steps to wind up the partnership business).

C. Dissolution Effective Date

Defendants assert the trial court's reconsideration order incorrectly set October 10, 2020, as the effective date of the partnership's dissolution. Defendants contend the "presumptive" dissolution date is the date a court orders dissolution, and there was no basis here to order an earlier dissolution date. We agree.

Defendants correctly cite the UPA's plain language, see D'Annunzio v. Prudential Ins. Co. of Am., 192 N.J. 110, 119-20 (2007) (holding a court must first consider a statute's plain language to determine its meaning), which allows for dissolution and winding up of a partnership where "[o]n application by a partner, [there is] a judicial determination that . . . it is not otherwise reasonably practicable to carry on the partnership business in conformity with the partnership agreement." N.J.S.A. 42:1A-39(e)(3) (emphasis added). It thus makes sense that the statute intended for a partnership to dissolve on the day a court orders its dissolution. See Hubbard v. Reed, 168 N.J. 387, 395-96 (2001)

(holding a commonsense interpretation of a statute applies where it does not expressly mandate a specific outcome).

As noted with the standards for judicial dissociation, there is no New Jersey precedent regarding the effective date of judicial dissolution, thus we look to rulings from other jurisdictions. In Robertson v. Jacobs Cattle Co., 830 N.W.2d 191, 204 (Neb. 2013), the Nebraska Supreme Court expressly rejected an attempt to backdate a partner's dissociation under Nebraska's judicial dissociation statute, Neb. Rev. Stat. § 67-431, which is like ours, reasoning nothing in the statute permitted "mak[ing] the dissociation retroactive to the date of the conduct which was judicially determined to be grounds for expulsion." The Connecticut Supreme Court reached a similar outcome in its follow-up decision to Brennan, explaining dissociation under Connecticut's statute occurred when "the dissociated partner is actually expelled from the partnership" and "can no longer lawfully participate in managing the partnership." Brennan v. Brennan Assocs., 113 A.3d 957, 963-64 (Conn. 2015). The court observed a "dissociated partner continues to have an economic stake in the partnership as long as [they] ha[ve] the right to continue participating in managing the partnership." Id. at 967. This reasoning is particularly instructive considering AC Ocean Walk acknowledged Blue Ocean Waters' continued partnership rights

when it agreed to allocate Blue Ocean Waters' share of the partnership's profits despite AC Ocean Walk's complaint suing defendants for breaching the partnership agreement. These rulings support Blue Ocean Waters' position that, based on the facts herein, the effective date of dissolution should be the date of the trial court's dissociation order.

Furthermore, we reject AC Ocean Walk's reliance on our follow-up decision to Sebring, where we affirmed the trial court's order dating dissolution of the partnership prior to the date of its previous order dissociating the defendant. Sebring Assocs. v. Coyle, 375 N.J. Super. 315, 318, 318 n.2 (App. Div. 2005). We recognized the defendant enjoyed no powers as a partner on the day the trial court ordered dissolution and would not have had any such powers on the backdated dissolution date. See id. at 318 n.2. Blue Ocean Waters, on the other hand, was still formally a partner when the court issued the partial summary judgment order that dissolved the partnership.

Accordingly, we reverse the trial court's order setting forth October 10, 2020, as the effective date of the partnership's dissolution, and remand for the court to enter an order reflecting January 18, 2023, as the effective date of the partnership's dissolution.

Affirmed in part and reversed in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2312-22

21